Christoffersen v. Weir.

MARGARET N. CHRISTOFFERSEN, APPELLEE, V. CHARLES WEIR, APPELLANT.

FILED MAY 26, 1923. No. 22389.

1. **Appeal:** CONFLICTING EVIDENCE. In a personal injury action where the evidence of physicians called by the respective parties is conflicting, in respect of injuries sustained, but there is sufficient competent evidence to support the verdict, it will not be disturbed on appeal.

2. ————: INSTRUCTIONS: PRESUMPTION. Where the court instructs on comparative negligence, it will be presumed that the jury took into account the contributory negligence of plaintiff, if any, and considered it in arriving at its verdict.

3. **New Trial:** NEWLY DISCOVERED EVIDENCE. Where an application for a new trial is made on account of alleged newly discovered evidence and the showing discloses that the evidence, if produced, would be cumulative in substance and effect, error cannot be predicated upon a denial of the application.

4. **Municipal Corporations:** USE OF STREETS. The right of a pedestrian to the lawful use of the crosswalks in a city or village is in all respects equal to that of a person driving a motor-propelled vehicle thereon. Comp. St. 1922, sec. 8392.

5. ————: ————: CARE REQUIRED. It is the duty of the driver of an automobile to exercise reasonable care in its operation, and where

Christoffersen v. Weir.

pedestrians are numerous and traffic is congested, the degree of care required must be commensurate with the danger reasonably to be anticipated.    Comp. St. 1922, sec. 8392.

6. ———: ———: WARNING BY AUTOMOBILISTS.    Section 8395, Comp. St. 1922, contemplates, not only the installation of warning devices on motor-propelled vehicles, but that they shall as well be used opportunely by the drivers of such vehicles to apprise pedestrians and other travelers of the approach of an oncoming car.

7. **Appeal:** REMITTITUR.    "Where plaintiff in a personal injury action recovers a verdict and the trial court directs a remittitur and the defendant appeals, this court will on request of plaintiff, in a proper case, set aside such remittitur either in whole or in part as the evidence may warrant." *Miller v. Central Taxi Co., ante* p. 306.

APPEAL from the district court for Douglas county. L. B. DAY, JUDGE.    *Affirmed as modified.*

*Kelso A. Morgan,* for appellant.

*Rosewater & Mecham,* contra.

Heard before MORRISSEY, C. J., LETTON, DAY and DEAN, JJ., BUTTON, District Judge.

DEAN, J.

This suit was brought to recover damages for personal injuries sustained by reason of defendant's alleged negligence in driving his car against plaintiff while she was crossing Farnam street at Fourteenth street in Omaha.    She recovered a verdict for $1,200.    A motion for a new trial was overruled on condition that plaintiff file a remittitur for $350.    Upon compliance with the court's requirement, judgment was rendered for $850, and defendant appealed.

Briefly plaintiff's account of the accident is that at about 6:30 or 7 o'clock in the evening of December 19, 1920, she left the north front door of the Paxton hotel pharmacy at the southwest corner of Fourteenth and Farnam streets.    Fourteenth street runs north and south; Farnam east and west.    From her evidence it appears that she went directly -north on the crosswalk to take a south-bound Council Bluffs trolley

car at Fourteenth and Farnam streets; that when she reached a point about six feet north of the car tracks on Farnam street defendant's car, which was being driven close to the curb, turned west from Fourteenth street into Farnam street and knocked her down; that the left front wheel of defendant's car pinned both of her feet to the pavement and had to be backed off before she could get up, the wheel passing diagonally over her right foot a little above the instep; that after the accident she walked on crutches for three weeks, and the injuries subsequently caused her to limp and at all times caused "great pain and mental anguish and loss of sleep." She also testified that the accident permanently impaired her health and that thereafter she was compelled to have medical treatment almost continuously at an expense approximating $100. It appears from plaintiff's evidence and defendant's admission that he sounded no signal and gave no warning of the approach of his car.

Defendant's version in substance is that on the night of the accident, at about 7 o'clock, he turned his Reo touring car from Fourteenth street into Farnam street at a speed of less than five miles an hour; that he was accompanied by his wife and her sister, Miss Tobin, all three occupying the front seat; that the headlights were turned on and the car was without curtains and there was nothing to obstruct his view; that he did not see plaintiff until she was opposite his left front wheel and that he stopped within six inches; that he immediately stepped out of the car and, at his suggestion, she was taken in his car to a physician at the Paxton hotel, where, on arrival, he told the doctor that plaintiff lost her balance and that her foot slipped under the front wheel of his car, but that the car did not strike her. Upon examination the doctor bound up her foot with adhesive tape. He testified that he did not see plaintiff running as she approached his car. Ten days after the accident plaintiff called defendant up, according to his evidence, and told him that was the first

day she had been able to put her injured foot to the floor, and that he again told her she should have a doctor.

Defendant's wife testified: "The instant the car stopped he (defendant) jumped out, the instant that I screamed, she was going down at the scream. Just at that instant a couple people jumped up there and some helped to pick her, and Mr. Weir backed up a few inches." She also testified that Mr. Weir told the doctor in the Paxton hotel that the front wheel of his car was on plaintiff's foot. When the doctor bound plaintiff's foot. she said he advised her "to stay off of it for a few days, it might be sore."

Mrs. Weir's sister testified that she did not see plaintiff until the car turned the corner, and then she made a leap and fell back, and when they arrived at the hotel Mr. Weir and another man took plaintiff by the arm and helped her up the steps.

Mr. Cosgrove, a bystander, testified that he heard a lady cry out, and that he and another man picked plaintiff up and helped to put her in defendant's car; that when he came up to her she was lying on her back in the street on the intersection of the sidewalk.

The only physician who testified on the part of plaintiff was the one who was first called to attend her about three weeks after the accident. He testified that he found she had been hurt with some kind of a crushing or pressing injury to the foot which resulted in crepitus; that her right ankle joint was much swollen and would bear weight with great difficulty and was very tender and painful on motion. He took an X-ray and found a fracture of one of the long bones of the ankle and of the foot, and sprained ligaments, and that the injury was permanent in that plaintiff would always limp; that the arch of her foot went down as soon as she commenced to bear weight on it; that she had formerly been treated for tuberculosis and that this tendency delays healing and tends to localize tuberculosis in an injured bone. He said that his treat-

ment consisted of rest, the use of crutches and adhesive plaster strips.

Three doctors were called on the part of defendant. The doctor who made the examination at the Paxton hotel testified that plaintiff could not put her foot down without pain, but that he found no fracture or deformity in any of the bones, and that he bound her foot with adhesive tape at the time. He further testified that to sprain the ankle or to fracture the small bones of the foot a "terrific force" is required. That the fracture of a bone of a tubercular person would heal more slowly than that of a person in normal health was conceded.

Another, who made an X-ray examination of the injured foot the day before the trial, testified that no fracture was disclosed, and that while there might be a minute fracture that sometimes heals without callus his X-rays gave no evidence of it; that the arch of her foot was in fairly average position; that he could not say she had a bad arch, and that he found nothing in the bones to cause lameness and that she had a good average foot. The doctor's conclusion was that there was nothing wrong with the bones, but he said that did not prove that there was nothing wrong with the foot.

The third physician called by defendant corroborated the other two in the main, but added that if plaintiff's foot or ankle was run over by an automobile it would be possible for the ligaments to become torn or lacerated in some degree, and that torn ligaments will sometimes occasion more pain and more swelling than a bone fracture, but that the X-ray does not disclose ligament injuries as it does bone injuries. He testified that on examination the day before the trial plaintiff complained of pain upon severe rotation of the arch.

Defendant complains of instruction No. 6, which follows: "Certain witnesses (physicians and surgeons) have been called who testified as expert witnesses. You are not bound to take the opinions of experts as binding upon you, but only to aid you in coming to a proper conclusion, their

Christoffersen v. Weir.

testimony being received as that of persons who are learned by reason of extra investigation and study along lines not of general knowledge, and the conclusion of such persons may be of value. You may adopt, or not, their conclusions, according to your own best judgment, giving in each instance such weight as you think should be given under all the facts and circumstances of the case."

The argument in the brief is that the evidence of the doctor who testified on the part of plaintiff conflicts with the evidence of the doctors called by defendant, and that "the evidence given by all the doctors was not so much as experts, but rather as men skilled in their profession who had made an actual examination of the plaintiff and were telling the jury the result of their examination."

True, the physicians differed in respect of plaintiff's injuries, their permanent nature and the like. It is obvious that the jury could not accept both of the conflicting versions of medical evidence. They chose between the two. It is elementary that where there is competent evidence to support the verdict, as appears in the present case, it will not be disturbed on appeal. *Penhansky v. Drake Realty Construction Co.*, 109 Neb. 120. Reversible error does not appear in the instruction.

It appears that plaintiff was 26 when she was injured, and that she lived at home with her parents. She testified that, before the injury, she did all the housework because her mother was aged and feeble and unable to work. For her services she received her board, lodging and clothing and about $15 or $20 a month. Since the injury she has been unable to do any of the housework. Clearly the amount of damages allowed by the jury, in view of plaintiff's expenses for medical treatment, and in view of the record generally, is not excessive.

The court properly instructed the jury on the question of comparative negligence, so that if there was contributory negligence on the part of plaintiff, as counsel insist, the jury took it into account in computing the amount of the recovery.

Defendant complains because the court denied his application for a new trial on the ground of newly discovered evidence. The court did not err in its ruling. The showing submitted by defendant discloses that the evidence of the proposed witness would have been cumulative in substance and effect.

The right of a pedestrian to the lawful use of the crosswalks in a city or village is in all respects equal to that of a person driving a motor-propelled vehicle. The statute provides that, "within any city or village no motor vehicle shall be operated at a rate of speed greater than is reasonable and proper, having regard for the traffic and use of the road and the condition of the road, nor at a rate of speed such as to endanger the life or limb of any person." Comp. St. 1922, sec. 8392.

That an automobile driver is required, as a matter of law, to exercise reasonable precaution and care in its operation is firmly established. That defendant did not see plaintiff is no excuse for running her down with his car. From his own evidence and that of his wife it appears that the car lights were turned on and the side curtains were removed and there was nothing to obstruct the vision. Under such circumstances defendant should have seen plaintiff in time to stop his car before the collision. It was his duty to see her, and if he had exercised reasonable precaution he would have seen her. *Mares v. Chaloupka, ante*, p. 199. Defendant was driving on one of the main thoroughfares of Omaha at the time, where the traffic is dense, and at a point where unusual care is required in the management of an automobile. When he first saw plaintiff he testified that he stopped his car within six inches. But it was too late. The wheel was then on plaintiff's foot, as defendant himself informed one of the physicians. The injury was then inflicted and the damage was done beyond recall.

Defendant admits that he did not sound the horn or give any warning when he turned into Farnam street, which is one of the busiest thoroughfares in the city. On

Christoffersen v. Weir.

this point defendant argues that there is no statutory requirement that any warning shall be given upon approaching or entering an intersection. Section 8395, Comp. St 1922, provides: "Every motor vehicle while in use on public highways shall be provided with good and sufficient brakes and also with suitable bell, horn or other signal." The statute is not meaningless. It was enacted for a purpose. Of course, it contemplates the installation of warning devices to be used to caution pedestrians and other travelers on the highway who may be in the path of an approaching car. Otherwise the provisions would be a mockery. But no warning was given, and a car, weighing almost 3,000 pounds, was negligently driven against and upon the person of plaintiff.

With respect to the remittitur. We are unable to find a substantial basis in the evidence which will support the trial court's requirement that a remittitur be filed by plaintiff in the sum of $350, as a condition precedent to the overruling of defendant's motion for a new trial. No need to repeat or to emphasize the evidence on this point; nor is there any need for extended argument. The record speaks for itself. Mention need only be made of the fallen arch and plaintiff's consequent halting walk, and the evidence which tends to prove that her injury is permanent, and also that which has to do with plaintiff's decreased earning power. This subject is briefly discussed in a very recent case. *Miller v. Central Taxi Co.*, ante, p. 306.

On plaintiff's application, and for the reasons herein advanced, it is ordered that the required remittitur be vacated and that judgment be entered for plaintiff for $1,200 as of the date of the rendition of the judgment in the district court.

Other assignments of alleged error have been pointed out by counsel which we have considered, but, in view of our decision, we do not find it necessary to discuss.

As herein modified, the judgment is affirmed.

AFFIRMED AS MODIFIED.