RODGER R. KAUFFMAN, ADMINISTRATOR, APPELLEE, V. GUY FUNDABURG ET AL., APPELLANTS.

FILED MAY 26, 1932. No. 28218.

*Ziegler & Dunn* and *G. W. Becker,* for appellants.

*Willis G. Sears* and *Max Fromkin, contra.*

Heard before GOSS, C. J., DEAN, GOOD, DAY and PAINE, JJ., and LANDIS and RAPER, District Judges.

LANDIS, District Judge.

On November 11, 1930, around noon, on a clear day, Rodger R. Kauffman, Jr., nine years of age, was struck by a truck, driven north, while crossing, in a diagonal direction, Fiftieth street in the city of Omaha. The administrator brought this action to recover damages for the death of the boy, resulting from the accident. The truck, weighing with the load about 5,000 pounds, was owned by Dold Packing Company and driven by its servant, Guy Fundaburg. The owner and driver of the truck are defendants. Verdict and judgment were in favor of the plaintiff and the defendants have brought the record here for review.

The defendants did not introduce any evidence in their behalf. Without conflict the record shows that Fiftieth street runs north and south, is paved, and has a street car track, with rails four feet apart, in the center. It is intersected by an east and west street known as Capitol avenue, which has a width of 23 feet from curb to curb. South of the intersection Fiftieth street is 36.8 feet between curbs and has an ascending grade of 0.5 per cent. North of the intersection it is 28.8 feet from

curb to curb with an upward grade north of 0.8 per cent.

About two blocks away, at Fifty-first and Davenport streets, is a public school, and on the day of the accident, about noon, school children were coming south on Fiftieth street near Capitol avenue on the east and west sides. Some boys had congregated on the east side, a short distance north of the intersection of Capitol avenue and Fiftieth street. These boys were about opposite the truck at the time of the impact with the deceased.

The Kauffman boy was on the west side, near the north regular crossing of the intersection. At more than a walk and less than running, he hastened in a diagonal direction across Fiftieth street. The driver saw him for the first time when he was directly in front of the truck, at the instant he was struck by its left front fender. Very shortly after the accident the boy died.

The accident occurred between the west rail of the street car track and the east curb of Fiftieth street, and north but near the north regular crossing of the intersection of Capitol avenue with Fiftieth street.

The truck driver testified as follows: "Q. As I understand it, after you had passed the intersection, your attention was attracted to some boys congregated on the east side of Fiftieth street? A. Yes, sir. Q. Why were you watching those boys at that particular time, if you know? A. Well, they was playing, and I thought maybe they might accidentally run into the street. Q. And while your attention was attracted to these boys, was that the time the boy, the Kauffman boy, came from the west in a southeasterly direction in front of your car? A. It was. * * * Q. In other words, you had looked to the west, you saw nothing, and then you looked and saw these boys on the east side and your attention was attracted to them and the time your attention was attracted to these boys, your truck came in contact with the Kauffman boy within a few seconds of that time? A. Yes."

This driver was 32 years of age, experienced, well acquainted with the vicinity of the accident, knew of the

presence of school children coming home from school on both sides of Fiftieth street. He says at the time of the impact he was going twelve to thirteen miles an hour. The truck was stopped after the impact within the length of the truck and a few feet. The witness Robert Hammond places the speed of the truck just shortly before the accident at fourteen or fifteen miles an hour. This witness also testifies: "Q. Now, detail what else you saw with reference to the boy and the truck. A. Well, when I noticed the boy when he was about, as I said, about midways of the pavement between the curb and the west rail, and he was running across the street and I seen this truck about midways of the intersection and as he run he was going across the street and must have saw the truck coming, and he tried to run, tried to cut north to pass it, but he couldn't get out of the way of it in time. Q. And then what happened? A. Well, the truck hit him and when I saw the truck hit him, I stopped my car and jumped out and went over and picked him up."

At no time, from the entering of the intersection to the time of the impact, did the truck driver blow his horn or give any warning.

The first error assigned consists in the overruling of defendants' motion for an instructed verdict in their behalf, or that the jury be discharged and a judgment entered in favor of the defendants. With this will be considered the assignments of error that the verdict is contrary to the evidence and the law.

Phrased in terms of requisites, the instant case seeks to comprehend a right to be protected against the particular hazard encountered, by some rule of law, which the defendants' conduct violated, thereby causing the death of the boy and resulting damages.

The motion for a directed verdict challenges whether there is an injured right which falls within the protection of the rule invoked by the plaintiff. It is for the court to say whether the conduct of the driver of the truck, which is complained of, subjected the right of the

deceased boy to a hazard against which the rule of law affords protection.

A person has a right in the absence of prohibition by statute or ordinance to cross a street at any point, and is not limited to the regular crossings. The driver of a truck owes to such a person the duty of reasonable or ordinary care in the circumstances.

It is not of itself negligence for a nine year old boy to cross a street at a place near but which is not at a regular crossing. In so crossing he is required to exercise only such care as persons of his age, experience and intelligence ordinarily exercise under like circumstances. The driver of the truck must exercise more care toward a child of tender years crossing the street between blocks than toward an adult in the same circumstances. See annotations 14 A. L. R. 1176, 67 A. L. R. 313, with cases cited on the duty and liability to persons struck by an automobile while crossing a street at an unusual place or diagonally. Section 39-1102, Comp. St. 1929, provides: "Within any city or village no motor vehicle shall be operated at a rate of speed greater than is reasonable and proper, having regard for the traffic and use of the road and the condition of the road, nor at a rate of speed such as to endanger the life or limb of any person." In the fifth paragraph of the syllabus of *Christoffersen v. Weir*, 110 Neb. 390, in considering this section, the court announces the general rule: "It is the duty of the driver of an automobile to exercise reasonable care in its operation, and when pedestrians are numerous and traffic is congested, the degree of care required must be commensurate with the danger reasonably to be anticipated." Section 39-1105, Comp. St. 1929, was considered in *Christoffersen v. Weir, supra,* and paragraph 6 of the syllabus thereto determines that this section "contemplates, not only the installation of warning devices on motor-propelled vehicles, but that they shall as well be used opportunely by the drivers of such vehicles to apprise pedestrians and other travelers of the approach of an oncoming car."

It seems obvious, considering the entire record, that the court must decide that the conduct of the driver of the truck complained of subjected the rights of the Kauffman boy to hazards against which the rules of law invoked afford protection. There are rules of law forbidding the claimed conduct of the truck driver, and the plaintiff by his petition has invoked them, hence it becomes pertinent to determine whether the driver has in fact been guilty of such conduct.

It must next be determined, on the whole evidence relating to the issues, whether more than one reasonable inference can be drawn. In other words, say whether there are issues raised for the jury's determination. It appears to us from the evidence that more than one reasonable inference can be drawn as to whether the truck driver kept a proper lookout shortly before the impact, the necessity of giving timely warning. and the effect of failure to do so, the rate of speed of the truck under the circumstances and conditions, whether the truck was under proper control considering that there were school children on both sides of the street, and the capacity of the Kauffman boy to exercise care to avoid the impact. It follows that the jury should determine whether the truck driver should have reasonably foreseen the impact as a probable result of his conduct. There were issues to be submitted to the jury, and the motion for a directed verdict by the defendants was properly overruled by the trial court. It follows, assignments in error that the verdict is contrary to the evidence and the law cannot be sustained.

The remaining assignments of error, except the one, are directed to the instructions given by the trial court. Complaint is made as to instruction No. 2, because the court submitted as one of the elements of negligence "failing to have the truck under proper control," and as to instruction No. 5, because that element was included as one of the grounds of recovery. This element is supported by both the petition and proof. The trial court did not err in giving these two instructions.

Defendants assign the failure of the trial court to give instruction No. 1, requested by them, as error. The pertinent part of this instruction is: "You are instructed that if you find from the evidence that the driver of the defendant's truck did not see the deceased in a position of danger, or by the exercise of ordinary care could not have seen the deceased in a position of danger in time to have prevented the accident, then it was not negligence on his part for failure to have blown his horn or given warning."

The duty to sound a signal of the approach of a motor vehicle depends largely on the circumstances of the particular case. The offered instruction should have taken into consideration the circumstances other than seeing or not seeing the deceased, which the evidence reflects as peculiar to this case. The instruction as requested was properly refused.

The error assigned in the court's instruction No. 8 is directed to the portion which reads, "and whether such driver was guilty of negligence depends upon whether, in exercising ordinary or reasonable care, he should have anticipated that the boy would come across the street at the point where the accident occurred," and in the same instruction the further part, "and you will take into consideration whether, under all the facts, the appearance of any one at the point where the boy appeared was of sufficiently frequent occurrence to cause the driver to take particular care on that account." When the instruction is read as a whole and taken with all the other instructions, considering the issues and the evidence pertinent to the case, this assignment of error is not well taken.

It is assigned as error for the court in instruction No. 14, on the measure of damages, to include therein the following: "In estimating this, however, the consideration is not limited to the measure of benefits received prior to the death of the boy, but it would embrace all the probable benefit which would accrue to the plaintiff

from the life of the deceased, modified by all the chances of failure and misfortune, and considering the expense which the parents might reasonably be put to in maintaining the boy during his minor years." *Fisher v. Trester*, 119 Neb. 529, *Crabtree v. Missouri P. R. Co.*, 86 Neb. 33, and *Draper v. Tucker*, 69 Neb. 434, sustain the part complained of by appellants.

The court in this instruction also stated: "The measure of the plaintiff's right of recovery is the pecuniary damage only; that is, the loss in money which the parents of the boy sustained by his death," and "the law provides no recovery on account of any loss of comfort and society on the part of the parents." At best, in actions of this nature, the jury have very meager and uncertain data from which to determine the damages. Necessarily, pecuniary damages are largely prospective and committed to the sound discretion of the jury. Absolute certainty is impossible.

According to the record, Rodger R. Kauffman, Jr., was mentally alert and physically normal, with a father earning a salary of $4,600 a year. Considering the whole evidence, there is sufficient to sustain the plaintiff's right of recovery as distinguished from the amount of recovery. In the instant case it cannot be said that the verdict of the jury for $3,000 is excessive.

The remaining assignment of error is directed to whether it was error for counsel for the plaintiff during the impaneling of the jury to ask counsel for the defendants if an insurance company was defending the action. The record shows that counsel for defendants objected to answering the question and the court sustained his objection. Considering the record, this assignment will not be sustained.

Failing to find prejudicial error, the judgment of the trial court is

AFFIRMED.