PHILIP TEWS BY HIS FATHER AND NEXT FRIEND, AUGUST TEWS, APPELLEE, V. JOHN BAMRICK AND EUGENE CARROLL, DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF BAMRICK AND CARROLL, AND JAMES TRYON, APPELLANTS.

26 N. W. 2d 499

Filed March 7, 1947.    No. 32146.

60

*Morrow, Lovell & Bulger,* for appellants.

*Mothersead & Wright* and *Robert G. Simmons, Jr.,* for appellee.

Heard before PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

WENKE, J.

Philip Tews, as father and next friend of August

Tews, a minor, brought this action in the district court for Scotts Bluff County against John Bamrick and Eugene Carroll, doing business under the firm name and style of Bamrick and Carroll, and James Tryon.

The purpose of the action is to recover damages for injuries suffered by the minor, August Tews, due to the negligent operation by the defendant James Tryon of a semitrailer truck belonging to Bamrick and Carroll.

The jury returned a verdict for the plaintiff and judgment was entered thereon. Their motion for new trial having been overruled, the defendants appeal.

When spoken of herein as individuals August Tews, the minor, will be referred to as the boy; James Tryon as the driver; and all other parties by their proper names.

The following facts are either admitted by the pleadings or undisputed in the evidence:

The truck involved in the accident was a 1942 International semitrailer consisting of an International tractor and an Omaha Standard trailer and was owned by the copartnership of Bamrick and Carroll. These two units had separate brakes. Those on the tractor were four-wheel hydraulic brakes controlled by a foot pedal while the trailer had air brakes controlled by a lever located on the steering wheel. The truck was 39 feet 9 inches in length, the trailer being 28 feet 9 inches long and 8 feet wide, while the tractor was 16 feet 11 inches long and 6 feet 8 inches wide with an overlap of 5 feet 11 inches, the trailer extending 2 feet 7 inches beyond the front of the tractor's rear tires. The total weight, as equipped at the time of the accident, was approximately 19,000 lbs. On March 26, 1945, James Tryon, who had been working for the owners as a driver for about six months, was driving the truck north on South Broadway Street in the city of Scottsbluff. At about 12:45 p. m. he approached the driveway leading west from South Broadway and continuing west along the north side of the potato office. He was familiar with this driveway and its immediate surroundings, having used it almost

daily for the past six months. He proceeded to turn left onto the driveway in order to park his truck in the space available for that purpose. The parking areas were immediately to the north of the driveway. The owner of the land on which the buildings immediately to the south of the driveway are located had made this parking space available to the public in general but especially as a convenience for the people who traded with the businesses located in these buildings. After entering the driveway and at a point northeast of the northeast corner of the potato office the truck came in contact with the boy and resulted in his injuries, the extent of which is not here in question. At the time of the accident the boy was five years of age.

Before proceeding further with a more detailed discussion of the disputed or conflicting facts we will take up the question of certain admitted evidence which relates to the speed of the truck as it entered and proceeded onto the driveway.

It is the appellants' contention that this evidence should not have been admitted under the following rule: "Where it appears that a witness had no opportunity to formulate a basis for an opinion as to the speed of a motor vehicle, it is error to permit him to give an estimate." Knoche v. Pease Grain & Seed Co., 134 Neb. 130, 277 N. W. 798. And as stated in Fairman v. Cook, 142 Neb. 893, 8 N. W. 2d 315: "Where it appears that a witness had no reasonable time, means, distance, or opportunity to formulate a basis for an opinion as to the speed of a car, the testimony of such witness is insufficient to sustain a finding of excessive speed in the absence of other evidence on the subject."

Of course the opposite of this rule must necessarily follow, that is: "Where it appears that a witness had a reasonable time, means, distance and opportunity to formulate a basis for an opinion as to speed of a car, such witness may express his opinion as to speed. The credibility and weight to be given such testimony is for

determination by the jury." Crecelius v. Gamble-Skogmo, Inc., 144 Neb. 394, 13 N. W. 2d 627.

On this basis the appellants question the admissibility of the testimony of the witnesses Jerome McKerrigan, Harry Lang, and John Kaufman.

The evidence of Jerome McKerrigan shows that he was driving a pickup truck north on South Broadway immediately behind the truck here in question; that he observed the truck turn and drive onto the driveway; that while following the truck he observed the speed of his own pickup; and that he was an experienced driver. Without going into further detail, there is no question but what this witness was qualified to give his opinion as to the speed he thought the truck was traveling. However, appellants contend that because many of the facts which this witness testified to are so conflicting with those testified to by other witnesses that his testimony carries little or no weight. Although it does appear that in many details his testimony disagrees with that of other witnesses, nevertheless on matters where he is qualified to testify the question of his credibility and the weight of his testimony are for the jury.

The evidence of John Kaufman shows that he first saw the truck when it was making the turn from the highway onto the driveway; that he watched it come in; that he was an experienced car driver; and that he could guess or estimate the speed of a car pretty close. From the above brief statement of his testimony it 'is apparent that the witness was qualified to give his opinion. It is true that on cross-examination his qualifications were materially weakened but it still remained a question for the jury to determine its weight. In connection with this witness the appellants argue that his testimony was merely a guess because of his use of that word in connection with his opinion as to the speed of the truck. However, it is apparent that the witness used the words estimate and guess interchangeably and with the same meaning. There is no question but what, based on his

observation and experience, he testified to what, in his opinion, was the speed of the truck at the time.

The same is true of the witness Harry Lang. At the time the objection was made on direct examination he had testified to facts which would qualify him to give his opinion as to the speed of the truck. At that time the objection was properly overruled. Later, on cross-examination, he testified to facts which materially weakened the basis for his opinion. Under this situation we think it was a matter for the jury.

We find the objections to this testimony were not well taken.

The principal contention of the appellants is that there is insufficient evidence to sustain the verdict. The effect of this contention is that the trial court should have directed a verdict for the defendants and consequently the following rule is applicable: "When the defendant in a jury trial moves for a directed verdict at the close of plaintiff's evidence, such motion must be treated as an admission of the truth of all material and relevant evidence favorable to the plaintiff and of all proper inferences to be drawn therefrom, and if it tends to sustain plaintiff's cause of action, the case should be submitted to the jury." Gohlinghorst v. Ruess, 146 Neb. 470, 20 N. W. 2d 381.

The case was submitted upon two issues. They are, that the truck was being driven at a speed greater than was reasonable under the conditions existing and that no warning was given of its approach.

Negligence is never presumed and cannot be inferred from the mere fact that an accident happened. Anderson v. Interstate Transit Lines, 129 Neb. 612, 262 N. W. 445.

"In an action to recover damages caused by alleged negligence, plaintiff must prove both negligence of defendant and that such negligence was the proximate cause of the injury complained of." Sippel v. Missouri P. R. Co., 102 Neb. 597, 168 N. W. 356.

" 'Proximate cause, as used in the law of negligence, is that cause which in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the accident could not have happened.' Anderson v. Byrd, 133 Neb. 483, 275 N. W. 825." Bixby v. Ayers, 139 Neb. 652, 298 N. W. 533.

" 'In an action for negligence, the burden is on the plaintiff to show that there was a negligent act or omission by the defendant and that it was the proximate cause of plaintiff's injury or a cause which proximately contributed to it.' Miller v. Abel Construction Co., 140 Neb. 482, 300 N. W. 405." Bowerman v. Greenberg, 142 Neb. 721, 7 N. W. 2d 711.

" 'It is the duty of the driver of an automobile to exercise reasonable care in its operation, and when pedestrians are numerous and traffic is congested, the degree of care required must be commensurate with the danger reasonably to be anticipated.' " Kauffman v. Fundaburg, 123 Neb. 340, 242 N. W. 658. See Christoffersen v. Weir, 110 Neb. 390, 193 N. W. 922.

Likewise, "A motorist at a private crossing, especially one that is customarily used, must exercise the same degree of care as at an ordinary public street crossing, * * *." 2 Blashfield (Perm. ed.), § 1278, p. 410.

"Under the law of this state, the lawfulness of the speed of a motor vehicle within the *prima facie* limits fixed is determined by the further test of whether the speed was greater than was reasonable and prudent under the conditions then existing. Comp. St. Supp. 1939, sec. 39-11,101." Folken v. Petersen, 140 Neb. 800, 1 N. W. 2d 916. Now § 39-7,108, R. S. 1943.

" 'What is a reasonable speed is necessarily largely dependent on the situation and the surrounding circumstances, it being obvious that a speed which would be safe, reasonable, and proper in some places and under some circumstances might be highly dangerous, unreasonable, and improper in other places and under other

circumstances.' 42 C. J. 926." Ross v. Carroll, 138 Neb. 1, 291 N. W. 726.

We have said that our statutes contemplate not only the installation of warning devices on motor-propelled vehicles but that they shall be used opportunely by the drivers of such vehicles to apprise pedestrians and other travelers of the approach of an oncoming car. The duty to sound a signal warning of the approach of a motor vehicle depends largely on the circumstances of the particular case. See section 39-774, R. S. 1943, Kauffman v. Fundaburg, *supra,* and Christoffersen v. Weir, *supra.*

As stated in 2 Blashfield (Perm. ed.), § 1311, p. 419: "On the other hand, the driver of an automobile is bound to assume that pedestrians will be using street crossings, and is under a common-law duty to give them or be ready to give them reasonable warning of the approach of his car, if the exercise of ordinary care so requires, which is usually a question of fact under the particular circumstances of the case."

It can be here said that the conduct of the boy was undoubtedly negligent, but we have often said a child of tender years is not chargeable with contributory negligence. See McKinney v. Wintersteen, 122 Neb. 679, 241 N. W. 112; Siedlik v. Schneider, 122 Neb. 763, 241 N. W. 535; and De Griselles v. Gans, 116 Neb. 835, 219 N. W. 235.

Nor does the fact that a child ran into the side of a truck automatically relieve the driver and owners thereof of liability for injuries received by the child. For if the driver, in the operation of the truck, did not take such precautions as reasonable and ordinary care under the circumstances required and such conduct was the proximate cause of the accident, then the driver and owners would be responsible and liable therefor.

The following plat is inserted in order to provide a picture of where the accident happened:

Observing the plat in order to become familiar with the place where the accident happened it will be noticed, commencing with a point approximately where the

extended north line of the driveway would hit South Broadway and from there a distance south of 85 feet, there is no curb on the west side of the street. The buildings south of the driveway are located from 35.2 to 37 feet west of the property line. East of these buildings and extending the full length thereof is a sidewalk from 10 feet to 11.8 feet in width which ends with the north edge of the buildings. At this point it is some 2½ inches higher than the driveway surface. East of the sidewalk is a surfaced area used for parking. Cars are parked along this sidewalk facing in a southwesterly direction with the front wheels against the walk. South of the driveway is a sidewalk 5 feet in width and ending at the east end of the buildings. This walk is raised about 6 inches above the surface of the driveway. North of the driveway is another cement walk raised approximately the same distance above the driveway surface. North thereof are two parking areas divided by another walk and reached by the driveway. This is the parking area already referred to.

This driveway, between these two walks, is 26.5 feet in width and has a gravel surface all the way along the north side of the building. When it reaches the east end of the buildings it will be noticed that the south 11.5 feet thereof is paved from there on out to the street and south to the walk east of the buildings while the north 15 feet continues to be gravel for a distance of 17.5 feet where it likewise becomes hard surfaced. This latter is important because of the point where the truck and boy came in contact.

Under the principle herein stated there is competent evidence, although disputed or conflicting, from which a jury could find the following: That there is considerable pedestrian traffic along the west side of South Broadway —this includes the people who trade at the stores, those who use the parking areas, and the public generally; that most of this traffic uses the sidewalk in front of the stores; that on reaching the north end of this sidewalk,

going north, they angle in a slightly northeast direction and then continue on north thereby avoiding any gravel and continuing on the hard surface; that the traffic coming from the north uses the same route; that this travel is particularly heavy during the noon hour when children are coming from or going to school and others are going to or from lunch; and that the driver was fully aware of that fact.

That at or about 12:45 p. m. of the day in question the driver was proceeding north on South Broadway driving the truck between 25 and 30 miles an hour; that on approaching the driveway he did not slow down but turned onto it at a considerable angle and without sounding his horn; that due to the fact that in turning, the rear wheels of the tractor, and especially the trailer, do not follow the front wheels of the tractor but turn considerably inside thereof and due to the further fact that a car was parked near the north end of the sidewalk, the rear of which was about in line with the north end thereof, the driver's attention was directed to the rear of his truck to make sure he would not hit the rear of this car; that while so proceeding he did not see or observe two high school girls who had left the northeast corner of the walk traveling in an easterly direction and who were compelled to jump back to avoid being hit; that he observed or could have observed the boy at the northeast corner of the walk as he came around two girls who were standing there; that the boy was skipping along and traveling in a generally north but slightly northeast direction apparently unaware of the approaching truck; that the driver did not sound his horn; that he did not apply any brakes until after he saw the boy and then only those on the tractor; that the application of these brakes did not become sufficiently effective so as to skid the wheels until the truck reached a point where the rear wheels of the tractor were about to leave the pavement on the north half of the driveway; that the boy and the truck

came together at a point about one foot north of the south edge of the gravel, which extends east on the north half of the driveway, and just east of the east edge thereof; that the contact on the truck was made at a point located just in front of the left rear dual wheel of the tractor and on the left front rounded corner of the trailer; that at the moment of contact the boy put his hands up against the trailer and appeared to attempt to turn but was immediately either knocked down or fell in front of the skidding dual wheels of the tractor; that he was pushed along in front of the wheels for a distance of some 8 to 10 feet and from that source received his injuries; that when stopped the truck was still at an angle and facing somewhat northwest.

As controlling of this situation the appellants cite many cases of this and other jurisdictions wherein the injured party suddenly and unexpectedly either jumped, walked, ran, fell, or was thrown into or in front of an automobile or truck and recovery was denied. In those cases the facts invariably disclose a situation where there was an insufficient lapse of time for the driver to effectively act to save the party from injury and because thereof the accident was inevitable. Of course in those situations the speed of the vehicle or the failure to sound a horn had no relationship to the cause of the accident and therefore were no part of the proximate cause thereof. The sudden action or conduct of the injured party was the sole proximate cause.

On the other hand the appellee cites cases wherein the courts approved the submission of the question to a jury on the basis of whether the driver saw or, by the exercise of ordinary care, could have seen the child in time to have avoided the accident by stopping, driving out of the way, or giving a warning of his approach.

The line of demarcation seems to be a question of whether there was time enough in which to act. If the

situation came about so suddenly that it was, as a matter of fact, impossible for the driver to respond then all the cases hold no liability attaches for the accident happened because of the sudden action of the injured party. However, where the facts disclose a situation that leaves the driver with sufficient time in which an ordinary prudent man could respond to the situation, then the question of whether or not his actions are negligent and the proximate cause of the injury becomes one of fact for the jury.

As stated in Hornbuckle v. McCarty, 25 A. L. R. 1508 (295 Mo. 162, 243 S. W. 327):

"If the driver of an automobile could by the exercise of ordinary care have discovered the peril of one crossing the street in such manner as to be likely to come in contact with the vehicle, and oblivious of his danger, in time by the exercise of ordinary diligence to have avoided the collision, his negligence in failing to do so, and not that of the pedestrian in walking into the side of the vehicle, is the proximate cause of the injury. * * *

"One about to drive an automobile across a crosswalk for pedestrians at a street intersection is bound to warn a pedestrian who, oblivious of his danger, is about to collide with the vehicle, or to stop, or pass behind the pedestrian."

Here the driver could have and admits having seen the boy at the northeast corner of the sidewalk east of the buildings. This point is some 16.5 to 17.5 feet from the point of the accident. The boy was then traveling at almost a right angle toward the course the truck was pursuing and apparently unaware of its approach. There is evidence to the effect that the boy was walking but assuming he was skipping, which some seem to remember is the way he was traveling, an ordinary boy of five years would not be traveling faster than five miles an hour. Based on the time it takes an average person to react to a situation there is evidence from which the jury could have found that the driver

had time in which to blow his horn and also stop the truck. Whether the driver's failure to stop was because of his inability, due to the speed of his truck, or his failure to act promptly and why he failed to blow his horn and the effect of such failure are matters for the jury's consideration. Likewise, whether or not they were the proximate causes of the injury.

In this respect we do not overlook the fact that the driver testified he was unable to blow his horn between the time he saw the boy and the accident and also that he applied the brakes just as soon as he could. But his conclusions are not conclusive as a matter of law. From this and the other evidence as disclosed by the record it became a question of fact for the jury whether, under the circumstances, he exercised ordinary care in regard thereto.

We think the two issues submitted to the jury find support in the evidence and therefore the court was correct in submitting them to the jury.

Appellants contend that the verdict is contrary to certain of the instructions given by the court. They base this contention on their version of the evidence which, of course, the jury was under no obligation to accept. It can be said of these instructions, particularly No. 20, that they were very favorable to the appellants and if the appellee were here complaining there would be a question if they were not too much so.

Appellants complain because the court refused to give two of the five instructions which they tendered. Some of what is contained in these instructions is in effect included in those given. Parts are not applicable to the situation as here disclosed by the evidence. We find no error was committed by the court's refusal.

Appellants complain of several instructions given by the court:

They contend that the court erred in giving instruction No. 15. This instruction informed the jury that, " * * * the crossing where the collision * * * occured is,

under the evidence of this case, a crossing that was customarily used by the public and under these circumstances, it was the duty of the driver of the truck to exercise the same degree of care as at an ordinary public street crossing." In view of the facts, which have already been sufficiently set forth, and the legal principles applicable thereto we do not think this instruction is erroneous but find it a correct statement under the circumstances of the situation as presented by the record.

They complain of instruction No. 17 but it is a correct statement, under our holdings, of what constitutes a proper speed under the circumstances and is without error.

They complain of the court's giving instruction No. 18 which informed the jury that the statutes of Nebraska provide as follows: "No person shall turn a vehicle from a direct course on a highway unless such movement can be made with reasonable safety, and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by such movement." See § 39-7,115, R. S. 1943.

Under the circumstances here involved the question of whether or not the truck's movements might affect the boy and whether or not the failure to sound the horn was a contributing or proximate cause of the injury were questions for the jury. We find no error in the giving of this instruction.

They also complain of instruction No. 21 which defines the duty of a driver upon observing children of tender years. Under the facts of this case we think this instruction was proper.

We find the court properly submitted the case to the jury and that it committed no prejudicial error in doing so. Therefore, the verdict and judgment entered thereon should be and are affirmed.

AFFIRMED.

74

YEAGER, J., dissenting.

In this case I respectfully dissent from the majority opinion. I am convinced that on the record a verdict should have been directed in favor of the defendants.

I am not complaining of the propositions of law set forth in the opinion. My contention is that the facts when weighed in the light of the principles of law announced do not support a verdict favorable to the plaintiff.

It is a fact that the plaintiff collided with the side of the truck and some considerable distance back from the front end. He walked, ran, or skipped into the side of it. The front end was well past him when this happened. If he did not see the 19,000-pound truck immediately in front of him could a jury, can this court, say with any degree of assurance or positiveness that his attention would have been attracted to the 19,000-pound truck which was already in front of him? If the truck had been moving slower or faster can it be reasonably inferred that the boy would not have run into it?

Affirmative verdicts in negligence cases must depend upon direct evidence or evidence from which reasonable inferences may flow, and not upon conjecture and speculation.

The verdict of the jury and the majority opinion are grounded on speculative inference flowing from speed and from failure to sound a horn. These speculative inferences are in my opinion insufficient to sustain the verdict.