PAT ADAMS, THROUGH AND BY HIS FATHER AND NEXT FRIEND, LLOYD ADAMS, APPELLANT, V. VERNON WELLIVER, APPELLEE.

51 N. W. 2d 739

Filed February 15, 1952.   No. 33064.

*Dryden, Jensen & Dier,* and *Smith Brothers,* for appellant.

*Johnson & Stuart,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This action for damages was brought in the district court for Dawson County by Lloyd Adams, father and next friend of Pat Adams a minor, against Vernon Welliver, defendant, to recover for personal injuries sustained by the minor when he came in contact with the defendant's automobile at an intersection crossing in the city of Lexington. The cause was tried to a jury, resulting in a verdict for the defendant. The plaintiff filed a motion for new trial which was overruled. Plaintiff appeals.

For convenience we will refer to the minor Pat Adams as Pat, or the plaintiff; to the defendant, Vernon Welliver, as defendant; and to other persons, as occasion requires, by their proper names.

The pleadings of the parties necessary to be considered in this appeal may be summarized as follows. The amended petition of the plaintiff charges negligence on

the part of the defendant in the following respects: In operating his automobile at a high and excessive rate of speed, in excess of 25 miles an hour, and negligently failing to have the same under control; in failing to maintain a proper lookout for other persons on the highway at the time and place in question; in failing to operate his automobile so as to prevent the same from running into, upon, and against the body of the plaintiff; and of negligently failing to sound his horn or warn the plaintiff of his intention to turn west at the intersection of Washington and Fifth Streets which the plaintiff was crossing from the south to the north.

The answer of the defendant was a general denial, and affirmatively alleged that the sole and proximate cause of the injuries sustained by the plaintiff was due to the negligence of the plaintiff in running and placing himself in front of the defendant's moving automobile at a point on Fifth Street 45 feet west of the cross walk of the intersection, where pedestrians are not expected to be crossing.

The plaintiff's reply to the affirmative allegations of the defendant's answer was a general denial.

The record discloses that Pat Adams, a minor 9 years of age, and his brother Darrell Adams, 13 years of age, were given some spending money by their father, Lloyd Adams, on Saturday evening, June 24, 1950, and were granted permission by their parents to go up town in Lexington to spend it. The evening was warm and pleasant. There was a large crowd in the city and the diagonal parking spaces on both the north and south sides of Fifth Street were filled with parked automobiles, as apparently was the case on Washington Street also. In this situation the driveable distance between parked cars north and south on Fifth Street is 28 feet.

The boys decided to visit some friends who lived west on Fifth Street in the city. They visited for a few minutes, then they proceeded east on the sidewalk on the

south side of Fifth Street to the intersection of Washington and Fifth Streets.

Washington Street, referred to as the main street of the city, runs north and south and is paved. Fifth Street runs east and west and consists of bare brick paving. On the southwest corner of the intersection is McKee's Jewelry Store. Directly across the street north is the City Bakery. The distance from curb to curb, north and south on Fifth Street, is 56 feet. The cross walk across the west side of the intersection and the sidewalk on the west side of Washington Street is 11 feet 8 inches wide.

When the boys arrived at the corner near McKee's Jewelry Store they stopped and waited for a car that blocked their way to pull out. This car went east on Fifth Street, then south on Washington Street. The boys then started north across the intersection with Pat a short distance in front of Darrell in the intersection cross walk. Pat saw a car, which later developed to be the defendant's car, which had proceeded south on Washington Street and was turning the corner west onto Fifth Street, going fast. He started to run in a northwesterly direction, saw the lights of the defendant's car coming around the corner, and did not have time to stop and let the defendant's car pass in front of him. His brother Darrell stepped back a step or two and remained on the cross walk. He was uninjured. Pat had run five or six steps when the right front wheel of the defendant's car came into contact with him. He was on the right front side of the defendant's car which knocked him down and ran over his legs.

Pat's testimony, in most respects, is corroborated by Darrell. Darrell testified that he stepped back and defendant's car passed in front of him, that he said nothing to Pat at the time, and neither did Pat say anything to him. Pat then started to run. He did not corroborate Pat's testimony that Pat was not running very fast, but testified that he was running fast.

A witness standing at the northwest corner of the intersection near the City Bakery testified that she was going to cross the intersection to the south but stopped to permit defendant's car to get around the corner from Washington Street to proceed west on Fifth Street. She saw the Adams boys standing in the middle of the street where they had stopped to let a car pass in front of them. This car had pulled out from the parking space on the south side of Fifth Street. After this car had passed the boys, Pat started to run in a northwesterly direction, and Darrell stepped back. The defendant's car was turning the corner of the intersection west on Fifth Street at a speed of 30 miles an hour. Pat was not running too fast. He was "zipping" along, and he was not on the cross walk but had deviated from it. This witness did not see the accident, but testified if Pat had continued straight ahead he would not have been hit by the defendant's car, and that he was a little more than halfway across the intersection when he deviated from the cross walk in a northwesterly direction.

A police officer testified that the accident happened about 9:30 p. m. He arrived at the scene of the accident 10 or 15 minutes thereafter and proceeded to investigate and take certain measurements. By measurement he determined it was $43\frac{1}{2}$ feet from the west curb on Washington Street to where Pat was lying when he arrived. It was $31\frac{1}{2}$ feet from where Pat was lying on the pavement west from the west boundary of the cross walk across Fifth Street. He prepared a sketch which showed that Pat was lying behind the third parked automobile on the north side of Fifth Street west of the intersection. Fifth Street is 57 feet 10 inches wide from curb to curb, north and south. There is a stop sign on Fifth Street, requiring automobiles to stop before entering Washington Street. The overall width of the parking spaces north and south on Fifth Street is 16 feet 10 inches. There were no skid marks or brake

marks, nor any signs that the defendant's automobile had come in contact with any object. When this witness found Pat, the defendant's car was directly parallel with the supporting pole of the stairs that lead to the second floor of the City Bakery, and was directly behind the third parked car on the north side of Fifth Street west of the intersection. Measurements made by Pat's father indicate that the distance from the west side of the cross walk west to the center of the third parked car on the north side of Fifth Street is 27 feet.

The defendant testified that he and his wife were down town on the evening the accident occurred and had attended a moving picture show. Just prior to the accident he was driving his 1938 Ford sedan south on Washington Street, and between Fifth and Sixth Streets he was proceeding at a speed of 10 miles an hour. There were other cars in the same traffic lane and also cars moving in the opposite direction. He stopped in front of Wisda's Hardware Store, the first building north of the City Bakery on Washington Street, for the reason that there was a car stopped across the cross walk. Before he turned west on Fifth Street there was no one on the cross walk and he was not required at that time to stop for pedestrians to pass. After he rounded the corner west on Fifth Street he felt a thump. He did not know what it was, and did not see Pat. The lights were burning on his car, and his brakes were good. He was traveling at a speed of between 5 and 10 miles an hour and had driven 40 to 45 feet west on Fifth Street when he felt the bump. He immediately applied his brakes and stopped his car within a distance of 5 feet. He then got out and investigated the accident to determine what he had struck.

It appears by the evidence that Pat was lying under the right front wheel of the defendant's car. His head, shoulders, and the upper part of his chest were under the running board of the car, and the remainder of his

body and legs were extending from under the car toward the north curb.

The defendant's wife corroborated his testimony with reference to the rate of speed he was traveling. She was unaware that defendant's car had come in contact with an object. She testified that defendant was generally looking for rattles in his car, and when he stopped she thought he was making an investigation of that nature. She did not leave the car.

A man and his wife, residents of Cozad, on the evening in question entered Lexington on Fifth Street and proceeded east thereon to the intersection of Fifth and Washington Streets. There were two cars ahead of them proceeding in an easterly direction. The second car ahead of them stopped at the stop sign. There were two boys standing on the south side of Fifth Street at the intersection. One little boy started out, hesitated, then darted out in front of the second car ahead of their car. There was a car coming from the north on Washington Street, turning the corner west onto Fifth Street, with its lights on, driving between 5 and 10 miles an hour. They saw Pat's head from the lights in front of this car, then the defendant's car stopped instantly. This testimony further disclosed that Pat was struck approximately when he was ahead of and about at the center of the front of the defendant's car. The impact between the defendant's car and Pat seemed to throw him forward, or he fell forward. Defendant's car was slightly east and north of these witnesses' car which was stopped at the time of the accident.

The doctor who examined Pat testified that he had a fracture of the right leg, no internal injuries, and no contusions or abrasions on the left leg or other parts of his body.

The plaintiff assigns as error that the verdict of the jury and the judgment of the court entered thereon is not sustained by the evidence and is contrary to law; that the trial court committed prejudicial error in not

instructing the jury on the provisions of the Nebraska statutes with regard to the duty of an automobile driver to sound the horn on his automobile as a warning to pedestrians as provided by section 39-7,115, R. S. 1943; that the trial court committed prejudicial error in refusing to give instruction No. 2 requested by the plaintiff; and that the trial court prejudicially erred in giving instruction No. 4 on contributory negligence and instruction No. 12 on comparative negligence.

The plaintiff relies on the case of Christoffersen v. Weir, 110 Neb. 390, 193 N. W. 922, as being in point on the duty of the defendant in the instant case to sound his horn. The court there held: "It is the duty of the driver of an automobile to exercise reasonable care in its operation, and where pedestrians are numerous and traffic is congested, the degree of care required must be commensurate with the danger reasonably to be anticipated." The court further held that the statute then in force "contemplates, not only the installation of warning devices on motor-propelled vehicles, but that they shall as well be used opportunely by the drivers of such vehicles to apprise pedestrians and other travelers of the approach of an oncoming car." See, also, Tews v. Bamrick, 148 Neb. 59, 26 N. W. 2d 499, to the same effect.

The duty of a motorist to sound a signal warning of his approach depends largely on the circumstances of the particular case. See, Tews v. Bamrick, *supra;* Kauffman v. Fundaburg, 123 Neb. 340, 242 N. W. 658.

A driver of an automobile should have his car under such reasonable control as will enable him to avoid collision with other vehicles or pedestrians, assuming that the drivers of the other vehicles and pedestrians exercise due care. Reasonable control by drivers of motor vehicles is such as will enable them to avoid collision with other vehicles operated without negligence in the streets or intersections, and with pedestrians in the exercise of due care; but complete control such as will only prevent a collision by anticipation of negligence or

illegal disregard of traffic regulations, in the absence of notice, warning, or knowledge, is not required by the laws of Nebraska. See, Ficke v. Gibson, 153 Neb. 478, 45 N. W. 2d 436; Spomer v. Allied Electric & Fixture Co., 120 Neb. 399, 232 N. W. 767.

We believe that under the evidence no question of negligence can attach to the defendant in failing to sound his horn under the circumstances of this case. He was not bound to anticipate that Pat would suddenly and unexpectedly leave the direct line of travel on the cross walk of the intersection, dart forward, and run diagonally in a northwesterly direction in front of his car after he had turned the corner and was proceeding west on Fifth Street. In such a situation defendant's failure to sound the horn had no relationship to the cause of the accident, and therefore was no part of the proximate cause thereof. There is competent evidence by which a jury could determine the situation came about so suddenly that it was, as a matter of fact, impossible for the defendant to respond. The trial court did not err in failing to instruct the jury with reference to the duty of the defendant to sound his horn, as contended for by the plaintiff.

There is no evidence that the defendant's car was not under control in the sense that the law requires. It was stopped within five feet after Pat was struck, a fact indicating that the driver was alert and acted in a prompt manner. See, De Griselles v. Gans, 116 Neb. 835, 219 N. W. 235; Trumbley v. Moore, 151 Neb. 780, 39 N. W. 2d 613.

This brings us to the proposition as to whether or not the trial court erred in instructing the jury on contributory negligence and on comparative negligence.

In Armer v. Omaha and C. B. St. Ry. Co., 151 Neb. 431, 37 N. W. 2d 607, this court held: "The age when an infant during his minority may be capable of understanding and avoiding dangers encountered while traveling upon a public street in a city cannot be fixed by

arbitrary rule, and generally is a question of fact for the jury. * * * Whether or not an infant between 11 and 12 years of age is of sufficient knowledge, discretion, and appreciation of danger that he may be subject to the defense of contributory negligence is generally a question of fact and not of law." In the body of the opinion the court said: "The appellant was about three months past 11 years of age, and cannot be charged with the degree of caution required of an adult in guarding against possible accidents while traveling upon and crossing a street in a city. There is no arbitrary rule fixing the time at which a child during its minority may be declared wholly capable or incapable of understanding and avoiding dangers to be encountered while engaged in such an activity. It is generally considered that such a question is one of fact to be decided by a jury. Whether or not negligence may be attributed to a child of such tender years is usually a matter for a jury under the circumstances of each case. It is only in an extreme situation where the facts show plainly knowledge and appreciation of the danger to be incurred, if certain action is had, that a court may decide as a matter of law that a child of such an age was guilty of negligence, or that his act or omission was the proximate cause of the happening in question. It was a question for the jury whether or not the appellant, a child slightly more than 11 years of age, was or could be negligent, and whether or not any act or omission on her part was the proximate cause of the collision." See, Tews v. Bamrick, *supra;* Kauffman v. Fundaburg, *supra.*

In Rule v. Claar Transfer & Storage Co., 102 Neb. 4, 165 N. W. 883, this court held: "As a general rule, whether a child of 11 years of age is of sufficient knowledge, discretion and appreciation of danger that it may be held guilty of contributory negligence is a question for the jury to determine." The court, in the opinion, said: "The general rule is that whether contributory negligence may be attributed to a child of such tender

years is a matter for the jury under all the circumstances of each case."

In De Griselles v. Gans, *supra,* it was held: "Until a driver of an automobile has notice of the presence or likelihood of children near his line of travel, he is bound only to the exercise of reasonable care, and has the right to assume that others will do likewise; and until he has such notice the rule is the same as respects children and adults."

In the last cited case this court determined that the action of the 9-year-old child was the proximate cause of his death and no recovery could be had against the defendant in any event. There appears in the opinion the statement "The plaintiff's decedent, on account of his tender age, is not chargeable with contributory negligence, * * *." However, this was not a question in the case.

The cases determined by this court which hold that an infant of tender years is not chargeable with contributory negligence appear to be cases where the infant is shown to be 7 years old or less, and where the evidence discloses the infant did not possess sufficient knowledge, discretion, and appreciation of the danger that he might be subject to the defense of contributory negligence. As stated in Armer v. Omaha & C. B. St. Ry. Co., *supra,* "There is no arbitrary rule fixing the time at which a child during its minority may be declared wholly capable or incapable of understanding and avoiding dangers to be encountered * * *." The court went on to say "What is required of an infant is the exercise of that degree of care which an ordinary prudent child of the same capacity to appreciate and avoid danger would use in the same situation." See cases cited in the opinion. See, also, 38 Am. Jur., Negligence, § 205, p. 888; 65 C. J. S., Negligence, § 146, p. 788.

The evidence discloses that Pat Adams was 9 years and a little more than 3 months of age at the time of the accident. From his testimony it is apparent that he was

an intelligent boy, in the fourth grade at school. He testified that he was "scared" when he started to run, but continued to do so. There is competent evidence from which a jury could determine that Pat possessed sufficient knowledge, discretion, and appreciation of danger to be able to avoid it, as an ordinary prudent child of the same capacity to appreciate danger and seek to avoid it would do in the same situation. Under the authorities heretofore cited, we believe it was a question for the jury to determine whether or not, under the circumstances of the case, Pat Adams was guilty of contributory negligence.

This brings us to the question of whether or not the trial court committed prejudicial error in failing to give instruction No. 2, requested by the plaintiff. This instruction is as follows: "You are instructed that 'the law required of those driving in the presence of children such care as is commensurate with the danger reasonably to be anticipated from possible erratic acts of such children. In this respect defendant was required to exercise ordinary care. The standard of care established by the law is what an ordinarily careful and prudent person would do under existing circumstances. One driving in the presence of children, in order to meet the standard of ordinary care, may be required to put forth a greater degree of effort or precaution than under ordinary conditions. It is for you to determine what the defendant's conduct should have been under the circumstances, as shown by the evidence, and whether he failed to exercise ordinary care.'"

In instruction No. 8, the trial court instructed the jury as follows: "A motorist who observes or should reasonably anticipate the presence of children in the highway is obliged to use reasonable care in view of all the circumstances. Such a motorist should realize that not all children exercise the same prudence and judgment of experienced persons and that some of them might do impetuous or thoughtless acts. He is not re-

quired to insure the safey of a child or to prevent the injury of a child at all costs. It is for the jury to determine the amount of care which a reasonable prudent person should have exercised under the circumstances and in view of the amount of danger which should have then been anticipated. The failure to use such amount of care constitutes negligence."

Instruction No. 8, heretofore set out, embodies in it everything that is contained in the requested instruction of the plaintiff, and is a correct statement of the law. See, Tews v. Bamrick, *supra;* Armer v. Omaha and C. B. St. Ry. Co., *supra.*

The instructions to the jury in this case, when considered and construed together, fairly state the law applicable to the issues raised by the pleadings and proofs. See, Barton v. McKay, 36 Neb. 632, 54 N. W. 968; O'Dell v. Goodsell, 152 Neb. 290, 41 N. W. 2d 123.

We conclude that the verdict of the jury and the judgment entered thereon by the trial court are correct and should be, and are hereby, affirmed.

AFFIRMED.