SUSAN L. SIPPEL, ADMINISTRATRIX, APPELLEE, v. MISSOURI
PACIFIC RAILWAY COMPANY, APPELLANT.

FILED JUNE 15, 1918.   No. 20099.

1. **Trial:** DIRECTION OF VERDICT. Although there is substantial evidence tending to establish each fact necessary to a recovery, so that in the absence of any conflicting evidence a verdict for the plaintiff must be allowed to stand, still there may be such evidence in the record that no reasonable mind could believe that the facts existed as alleged, and in such case the court should so direct the jury.

2. **Negligence:** PRESUMPTION. When there is no evidence as to negligence on the part of the person injured, the presumption of due care that arises from the instinct of self-preservation generally obtains.

3. **Railroads:** NEGLIGENCE: QUESTION FOR JURY. Whether it is negligence to push cars before an engine without placing a guard on the foremost car to signal those in control of the train if any person is in danger, and to warn such person, depends upon the circumstances and conditions surrounding the operation of the train. It may be negligence *per se*. In most cases, it will be a question of fact for the jury.

4. **Negligence:** BURDEN OF PROOF. In an action to recover damages caused by alleged negligence, plaintiff must prove both negligence of defendant and that such negligence was the proximate cause of the injury complained of.

5. **Railroads:** INJURY TO PEDESTRIAN: SUFFICIENCY OF EVIDENCE. The evidence in this case, indicated in the opinion, will not support a finding that negligence of the defendant was the proximate cause of the injury complained of.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. *Reversed.*

*E. J. White, G. L. DeLacy, J. A. C. Kennedy* and *M, V. Beghtol,* for appellant.

*Berge & McCarty, contra.*

SEDGWICK, J.

The body of Charles Sippel was found on the tracks of defendant over a bridge in the defendant's yards.

He had evidently been run over and killed by one of defendant's trains. The administratrix of his estate brought this action in the district court for Lancaster county to recover damages, alleging that his death was caused by the negligence of the defendant. The trial resulted in verdict and judgment for the plaintiff, and the defendant has appealed.

There is no complaint of the manner of the trial, nor of the rulings of the trial court, except in refusing to direct a verdict for the defendant on the ground of a failure of evidence. The plaintiff in the brief assumes that, "if there is any evidence to support the verdict, if there is any evidence to support a finding in favor of plaintiff on the various elements of the case, then the judgment of the lower court should be affirmed." This is not an accurate statement of the law. It is for the jury to determine the preponderance of the evidence. If there is a substantial conflict and reasonable minds might differ as to the existence of facts necessary to entitle the plaintiff to recover, it is for the jury to determine those facts, and not for the court. The verdict of a jury will not be disturbed unless it is clearly wrong. If there is substantial evidence tending to establish each fact necessary to a recovery, so that in the absence of any conflicting evidence a verdict for the plaintiff must be allowed to stand, still there may be such evidence in the record that no reasonable mind could believe that the facts existed as alleged, and in such case the court should so direct the jury.

It is conceded that the evidence shows that the defendant's train, by which decedent was killed, was operating in the switching yards of the defendant at Nebraska City; that an engine in charge of an engineer and fireman was pushing one car before it to the north over what is called the high bridge, and drawing five or six freight cars after it, moving at a slow speed, perhaps three or five miles an hour. At the approach to this bridge the defendant had posted a sign, which read: "Danger—Trespassing on

this bridge is forbidden.'' There is evidence that, not-withstanding the danger to foot-passengers crossing over this bridge, and the warning of the defendant, some people did walk over the bridge from time to time in preference to using the main traveled road, or what is called the lower bridge, which is less dangerous. The plaintiff insists that the bridge was ''commonly used by pedestrians,'' and that the deceased was a licensee on the bridge. The evidence is very voluminous upon this question and is somewhat conflicting, and we assume that it was a question for the jury as to whether the conditions were such that the defendant was required to use reasonable care to avoid injuring the deceased. We regard that question as determined in favor of the plaintiff. No one saw the accident, and there is no evidence as to how it happened. Where there is no evidence as to negligence on the part of the person injured, the presumption of due care that arises from the instinct of self-preservation generally obtains. The evidence as to the character of the deceased and his conduct just prior to the accident as tending to rebut this presumption is so conflicting that we assume that the question of due care on his part was for the jury to determine and has been resolved in favor of the plaintiff. The question of difficulty in this case is whether there is substantial evidence of negligence on the part of the defendant which was the proximate cause of the accident. The negligence alleged, and apparently the only negligence of the defendant relied upon in the briefs, is thus stated: ''It is negligence to back train without lookout on end to give warning to pedestrians.''

If several cars are being pushed through a street frequented by people, and no one in control of the train is so situated as to know whether the track is clear or to give warning, and avoid injuring those who may be exposed to danger from the approach of the train, it is negligence *per se* to fail to station a lookout who can give such warning. In a case of that kind the court said: ''There could be no doubt that the evidence    *    *    *    was am-

ply sufficient to justify the court in refusing, at the instance of the defendant, to instruct the jury to find for it.'' *Chicago & A. R. Co. v. Wilson,* 225 Ill. 50.

On the other hand, if a train is being moved over a bridge, where it is manifestly dangerous for people to walk, and proper signs are placed so as to warn people of the danger of trespassing thereon, and only active persons who court danger attempt to cross the bridge, it would not be expected that a lookout would be stationed to prevent accidents. ''Whether it is negligence or not for the servants of a railroad company to run an engine backwards, or push cars ahead of an engine, without stationing some one on the tender, or foremost car, to signal its approach to a person who may be on the track, is a question which is controlled by the circumstances under which the engine or train is operated. Under some circumstances, the act has been held to be negligence as a matter of law; but in most cases it has been held to be a question of fact to be submitted to the jury.'' *Southern R. Co. v. Daves,* 108 Va. 378.

Is there such substantial conflict in the evidence as to the facts upon which the charge of negligence depends as to make it a question for the jury, and, if so, was such negligence the proximate cause of the injury? There was only one car being pushed by the engine; the others followed the engine. The engineer and firemen both testified that the car was no obstruction to their view of the tracks; that they could, and continually did, see the tracks before them, and that there was no one upon the tracks. This evidence was not contradicted. No one testified that the deceased was upon the tracks as the train approached the bridge. He was evidently injured as the train approached the bridge from the south. He was a night watchman, accustomed to sleep from about 6:30 o'clock in the morning, and, as testified by his wife, ''would get up about 10 o'clock and eat, and then he would talk a while, and he would retire again and get up about four. * * * He came home, and I had break-

fast on the table, and I asked him if he would eat, and he said 'No, because I will get up about 10 o'clock,' and he retired, and about 8 o'clock I went up,  *  *  *  and in a few minutes he got up and dressed and came down, and I said to him, 'Well, why, what did you get up so early for?' And he said, 'Well, I want to go to the water-works.' And I said, 'What are you going there for?' He said, 'I have been over there, you know, several times.'  *  *  *  Well, he said he wanted to go to the water-works, and that night was his pay night, he got his pay in the evening, and he says, 'I want to go over to the water-works because I have been promised a position there, I am tired.'  *  *  *  Well, he dressed, and then I asked him if he would eat something before he went, and he ate some cakes, and he said, 'When I come back,' and he went.  *  *  *  And he said, 'I will take those (some decayed potatoes) with me and throw them in the river.'  *  *  *  I had large washings, and I couldn't do it alone without help, and draw the water, and he said, 'I will be right back, I will go to the water-works and come right back. Now, whatever you do, don't start to draw that water until I come,' and I said, 'All right.' And that was the last ever seen of him.''

He had not taken his usual sleep; he was ''tired.'' No one knows how long he had been on the bridge. He may have been some time on or about the bridge. It is more probable that he was loitering somewhere about the bridge than that he was passing over the bridge in an ordinary manner on his way to town. The uncontradicted evidence of the engineer and fireman that he was not upon the tracks as the train approached the bridge disposes of that question. No witness saw him approach the river, nor while he was throwing his refuse therein. If he climbed upon the bridge after having disposed of his refuse, or if he stopped at the entrance of the bridge to throw his refuse in the river, there is no evidence that he could be observed by a lookout on the car immediately before the engine, and there is positive evidence

that he was not on the track where he could be seen from the approaching train. Under these circumstances, it cannot be said that there is substantial evidence that any negligence of the defendant was the proximate cause of his injury.

If it had been shown that the deceased was upon the tracks when the cars were approaching the bridge, there might be room for the last clear chance doctrine, if it could be found that the engineer or fireman knew or ought to have known that he was in danger. In any view of the case, there is a total failure of evidence that anything that this defendant did, or failed to do, was the proximate cause of his injury, so as to create a liability for damages.

The judgment of the district court is reversed and the cause remanded.

REVERSED.

Rose, J., not sitting.

Letton, J., dissenting.

I am of opinion that the evidence as to the use of the bridge as a way by the public, to defendant's knowledge, was sufficient to make it a question for the jury whether the defendant's employees used ordinary care to avoid injury to licensees when they backed an engine and cars over the bridge without a lookout or man stationed at the end of the car to give warning to persons liable to be walking on the track.