LLOYD W. SLEEZER, APPELLEE, v. ALICE M. LANG, SPECIAL ADMINISTRATRIX OF THE ESTATE OF CARL LANG, DECEASED, APPELLANT, IMPLEADED WITH BI-STATE DISTRIBUTING CORPORATION, A CORPORATION, APPELLEE.

102 N. W. 2d 435

Filed April 8, 1960. No. 34697.

*Gross, Welch, Vinardi & Kauffman,* for appellant.

*James J. Fitzgerald* and *Robert E. O'Connor,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Douglas County. It involves an action brought by Lloyd W. Sleezer against Carl Lang, doing business as Lang Flying Service, to recover damages for personal injuries suffered in an airplane accident which accident, plaintiff alleges, was caused by acts of negligence on the part of Lang and of the pilot thereof, who was an employee of Lang, while the latter was operating it in flight with plaintiff as a passenger therein. .

Bi-State Distributing Corporation, plaintiff's employer, was also made a party defendant because of certain subrogation rights it would have in and to any recovery made by plaintiff by reason of payments it had and would make to and for plaintiff under and by reason of the Nebraska workmen's compensation statutes. Its rights are not material to any issue raised by this appeal and therefore they will not be discussed.

Trial was had to a jury and on December 3, 1954, a verdict was returned by it for defendant Carl Lang. Judgment was entered thereon. Thereafter, on December 10, 1954, plaintiff filed a motion for an order vacating the verdict and judgment entered thereon, and for new trial. This motion was not ruled on by the trial court until June 17, 1959, some 4 years, 6 months, and 7 days after it had been filed, when it was sustained. Thereafter, on July 10, 1959, it was suggested to the trial court that defendant Carl Lang had died on June 26, 1959. On July 13, 1959, the action was revived in the name of Alice M. Lang as special administratrix of the estate of Carl Lang, deceased, she being substituted as defendant in his place. On July 14, 1959, the special administratrix took this appeal from the order granting plaintiff a new trial. The appeal from such an order is authorized by section 25-1315.03, R. R. S. 1943.

"The purpose of a new trial is to enable the court to correct errors that have occurred in the conduct of the trial." Olson v. Shellington, 162 Neb. 325, 75 N. W. 2d 709. See, also, Pongruber v. Patrick, 157 Neb. 799, 61 N. W. 2d 578; Owen, Administrator v. Moore, 166 Neb. 226, 88 N. W. 2d 759.

The trial court gave no reason for its granting a new trial. In view thereof, the following applies: "If the trial court gave no reasons for its decision in sustaining the motion for new trial, then the appellant meets the duty placed upon him when he brings the record here with his assignments of error and submits the record to critical examination with the contention that there was no prejudicial error. The duty then rests upon the appellee to point out the prejudicial error that he contends exists in the record and which he contends justifies the decision of the trial court. The appellant then in reply has the right, if he desires, of meeting those contentions." Maska v. Stoll, 163 Neb. 857, 81 N. W. 2d 571. See, also, Hert v. City Beverage Co., Inc., 167 Neb. 557, 94 N. W. 2d 27; Gain v. Drennen, 160 Neb. 263, 69 N. W. 2d 916; Sautter v. Poss, 155 Neb. 62, 50 N. W. 2d 547. As stated in Sautter v. Poss, *supra*: "There is no burden in the sense of a burden of proof upon either party. The burden is upon both parties to assist the court to a correct determination of the question or questions presented." This the parties have endeavored to do.

In respect to the granting or denying of a motion for a new trial we said in In re Estate of Kinsey, 152 Neb. 95, 40 N. W. 2d 526: "The district court has the power and is required to consider and determine motions for new trial by the exercise of its judicial discretion, which means the application of statutes and legal principles to the whole record then before it. A new trial may be granted only for legal cause or reason and where it appears that a legal right has been invaded or denied. If legal cause or reason exists and the complaining party

makes his application in writing within the time fixed by statute, the trial court has no discretion, and motion for new trial must be sustained. Otherwise it must be overruled, because where a party has sustained the burden and expense of a trial and has succeeded in securing the verdict of a jury on the facts in issue, he has a right to keep the benefit of that verdict and judgment thereon unless there is prejudicial error in the proceedings by which it was secured." See, also, Owen, Administrator v. Moore, *supra;* Burhoop v. Brackhan, 164 Neb. 382, 82 N. W. 2d 557; Anderson v. Nielsen, 162 Neb. 110, 75 N. W. 2d 372; Dixon v. Coffey, 161 Neb. 487, 73 N. W. 2d 660.

Appellee Lloyd W. Sleezer, plaintiff below, was at all times herein material general manager of Bi-State Distributing Corporation of which Harry Sidles was then president. Bi-State Distributing Corporation, to which we shall hereinafter refer as Bi-State, was then engaged in distributing appliances, including Bendix. Bi-State had been invited to send representatives to a national sales meeting of Bendix to be held at South Bend, Indiana, on Thursday, September 18, 1952. Sidles called Carl Lang, to whom we shall hereinafter refer as either Lang or defendant, to charter a plane for the trip and did so a few days before September 17, 1952, arranging with Lang to leave on the afternoon of Wednesday, September 17, 1952, and return sometime during the day of Thursday, September 18, 1952. Lang was licensed to operate a private airplane taxi service and chartered planes for that purpose. He was not operating a regular scheduled plane service. His headquarters were at the Omaha Municipal Airport where he operated under the name of Lang Flying Service. Sidles, appellee, and R. J. Harrison, the latter being the general sales manager of Bi-State, planned to make the trip. They reported to Lang's headquarters at the Omaha Municipal Airport shortly before 3 p. m., on September 17, 1952, ready to take the chartered plane

to South Bend. Lang had furnished a single engine Beechcraft Bonanza for the trip and Ray Vequist as pilot. Ray Vequist, to whom we shall hereinafter refer as either Vequist or the pilot, was a licensed pilot who, at the time, was working for Lang. The Beechcraft Bonanza is built to carry four people, a pilot and three passengers. The plane, with all parties and their baggage aboard, left Omaha at 3 p.m., and arrived at South Bend at 6 p.m., or shortly thereafter. The trip was uneventful.

On the return trip on September 18, 1952, the plane left South Bend at 6:07 p.m., and the trip was again uneventful until after the plane had passed over Des Moines, Iowa, and headed for Omaha, Nebraska. For reasons, which will hereinafter be set out, the plane attempted an emergency landing at an airfield located at Atlantic, Iowa. In making such landing the plane missed the runway, landed in a field of soybeans, and nosed over on its top. It is because of personal injuries, which appellee claims he received as a result of the accident, that he here seeks to recover damages.

We said in Scarborough v. Aeroservice, Inc., 155 Neb. 749, 53 N. W. 2d 902, 30 A. L. R. 2d 1159: "A private carrier is one that is not bound to carry for any reason unless the obligation to do so is voluntarily assumed by virtue of a special contract, and such carrier is liable only for such loss or injury as results from a failure to exercise ordinary care." The evidence conclusively establishes that Lang was within the class to which the foregoing applies.

Appellant contends there was not sufficient evidence of negligence in this case to justify the court's submitting it to a jury, that is, that defendant was entitled to a directed verdict. The only charge of negligence submitted by the trial court "* * * is the claim that the pilot failed to refuel en route when he had ample opportunity and time to do so and thus permitted the plane to run out of gas."

On cross-examination Lang, while testifying in his own behalf, was asked the following question: "Specifically, there weren't any flares aboard this ship, were there?" Without objection being made he answered as follows: "No, no flares." In this situation the following has application:.. "A judgment will not be reversed for error in overruling a motion for a directed verdict at the close of plaintiff's case when certain .essential testimony was not then in the record, when, at the time of renewing the motion at the close of all the evidence, such testimony is in the record and its admission is not assigned as error here." Lund v. Holbrook, 153 Neb. 706, 46 N. W. 2d 130.

The admission of this specific evidence, as such, is not assigned as error by appellant. However, appellant does contend that all evidence as to flares given on cross-examination by defendant, over objection, was erroneously admitted by the trial court and fully discusses that contention in her brief. However, such contention cannot be properly made to this specific evidence here for no objection was made thereto at the time it was received nor was any motion made to strike it at that time.

"Negligence is a failure to do what reasonable and prudent persons would ordinarily have done under the circumstances and situation, or doing what reasonable and prudent persons under the existing circumstances would not have done." Mundy v. Davis, 154 Neb. 423, 48 N. W. 2d 394. It is of course true that negligence cannot be inferred merely because an accident happened. Laurinat v. Giery, 157 Neb. 681, 61 N. W. 2d 251; In re Estate of Bingaman, 155 Neb. 24, 50 N. W. 2d 523.

"In determining the question of whether or not a motion of a defendant for a directed verdict * * * should be sustained the court is required to consider the evidence in the light most favorable to the plaintiff and to resolve every controverted fact in his favor, and he

should have the benefit of every inference that can reasonably be deduced therefrom." Anderson v. Evans, 164 Neb. 599, 83 N. W. 2d 59. We shall set forth the evidence in light of the foregoing principle.

Omaha is 500 air miles from South Bend. The daylight trip to South Bend on September 17, 1952, which was nonstop, was uneventful, weather conditions being good. It took only 3 hours to make the trip, the airplane being aided by a slight tail wind.

The airplane used had two tanks for gasoline, one in each wing. Each tank had a capacity of 20 gallons. The evidence is to the effect that the airplane would ordinarily use 10 gallons of gasoline an hour while in flight regardless of whether it had head winds or tail winds, as they would only affect its ground speed. However, it appears that on the trip from Omaha to South Bend it consumed more than 10 gallons an hour for when the airplane was serviced at South Bend, immediately after it arrived there, 32.5 gallons of gasoline were put in the 2 tanks.

The airplane left South Bend for a return nonstop flight to Omaha at 6:07 p.m., on September 18, 1952. The plane was to fly over the same route taken the previous day, which included Des Moines and Atlantic, Iowa. The same pilot and passengers, together with their luggage, were aboard as on the trip to South Bend. The pilot checked both gasoline tanks at South Bend and found them to be full. The pilot's flight plan indicated he estimated it would take 3 hours and 20 minutes to reach Omaha, which would make the latter part of the trip a night flight. In fact, darkness overtook the airplane as it passed over Chicago Heights, Illinois. The airplane carried no flares. Flares carried by airplanes are of an incendiary type, being made of magnesium. They burn intensely and are used for lighting purposes.

The trip back, as far as Des Moines, was uneventful, the weather being good. It is about 385 air miles from

South Bend to Des Moines and 115 air miles from there to Omaha. The airplane passed over Des Moines about 8:42 p.m., or 2 hours and 35 minutes out of South Bend. Although they had been bucking a slight head wind the gauges in the plane showed one of the gasoline tanks to be empty but the other to be three-fourths full as they passed over Des Moines. This indicated they had about 15 gallons of gasoline left at that point. The pilot testified it is good practice to have a 30-minute reserve of gasoline to continue flight to a certain point and that the regulations covering planes in flight so require. Omaha being only 115 air miles from Des Moines, and considering the speed it had made and the gasoline it had consumed from South Bend, it would appear that the airplane then had enough gasoline to provide this time reserve as it passed over Des Moines on its way to Omaha.

The record shows that Des Moines has a modern airport with modern facilities. It has multiple concrete runways 7,500 feet long that are fully equipped with modern lighting facilities. It also has modern radio, navigational, and radar facilities. It was lighted as the plane passed over Des Moines.

Atlantic, Iowa, is between Des Moines and Omaha. It was on the pilot's planned line of flight. Between Des Moines and Atlantic, at a point just beyond the half way point, the pilot of the plane noticed the gasoline gauge was dropping faster than he thought it should, it then indicating the tank that was three-fourths full over Des Moines was only about one-fourth full. Under these conditions the pilot decided to proceed on toward Atlantic.

Vequist was at all times during the flight from Omaha to South Bend and return operating the plane as an employee of Lang and any conduct on his part while doing so, which would give appellee any basis for a cause of action herein, would be imputed to Lang.

Atlantic has an airfield with a marked but unlighted

3,600-foot sod runway, which runs east and west. The airfield did have portable lights which consisted of smudge pots. These could, when lighted, be taken out and set along the runway to mark and light it. It had an airport manager who lived near the airfield but who was not in constant attendance thereat. The pilot was familiar with this airfield and its operations as he had, on previous occasions, landed there during the daytime.

When the airplane got over Atlantic the gasoline gauges on both gasoline tanks indicated they were empty. The pilot therefore decided to make an emergency landing at the airfield located there. He turned on his landing lights, there being one under each wing of the plane. He flew over the town with his landing lights on hoping the airport manager would see the plane and put out the portable lights along the runway. This did not happen. The pilot passed over the unlighted airfield twice with the landing lights on hoping to locate the runway. He was not able to do so. On the third pass he attempted to land. As he came down to land he observed markers and thought he would land on the runway. However, he landed some 50 to 100 feet north of the runway in a field of soybeans. As the nose wheel of his plane hit the furrows in the field, the field being planted in north-south rows, it crumpled and the airplane nosed over on its top.

Under this situation we think it was a question for a jury to decide whether the pilot failed to do what a reasonable and prudent person in his position would ordinarily have done under these circumstances and this situation or did what a reasonable and prudent person in his position would not have done under the existing circumstances; that is, whether to continue on toward Omaha, with the strong possibility of having to make an emergency landing at Atlantic on an unlighted airfield when he was not carrying flares, rather than to turn back to Des Moines and land there on a lighted

runway to check his gasoline supply and refuel his plane, if necessary.

"In an action to recover damages caused by alleged negligence, plaintiff must prove both negligence of defendant and that such negligence was the proximate cause of the injury complained of." Sippel v. Missouri P. Ry. Co., 102 Neb. 597, 168 N. W. 356. See, also, Tews v. Bamrick, 148 Neb. 59, 26 N. W. 2d 499.

"Proximate cause, as used in the law of negligence, is that cause which in a natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which it would not have occurred." Barney v. Adcock, 162 Neb. 179, 75 N. W. 2d 683.

If, under the situation hereinbefore set forth, a jury should find the pilot was negligent in failing to turn back and land at the Des Moines airport to check his gasoline and refuel his plane, if necessary, then it can be said that the jury could also properly find that such negligence on the part of the pilot was the cause of his having to make an emergency landing with the airplane at an unlighted airfield at Atlantic, which landing resulted in the accident and the proximate cause thereof. There is evidence in the record to support a finding that appellee suffered serious injuries as a result of the accident. In view of what we have said the appellant's contention that the record does not present a jury question is without merit.

A jury was impaneled to try this case on Monday, November 22, 1954. Trial was then recessed until Wednesday, November 24, 1954, at which time the appellee began the introduction of his evidence. At that time Lang's answer, which he had filed on February 5, 1954, contained the following allegation: "* * * admits that the airplane in which plaintiff was riding as a passenger made an attempted emergency landing at the time and place alleged; that said plane nosed over in said attempted emergency landing, necessitated by a shortage of fuel caused by a severe and unexpected

head wind, and that the plaintiff received some injuries, the nature and extent of which are unknown to this defendant." In addition thereto the answer contained allegations setting forth the defense of assumpton of risk. At the close of the day on November 24, 1954, which was the day before Thanksgiving, the trial was recessed until Monday, November 29, 1954, when it was continued. Sometime during the day of November 29, 1954, Lang was "given leave to file amended answer instanter," which he did. The effect of the amended answer is a general denial and a withdrawal of the above admission and defense. Did the trial court err in permitting Lang to file this amended answer instanter and, if so, was it prejudicial and grounds for granting appellee a new trial?

Section 25-852, R. R. S. 1943, provides as follows: "The court may, either before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding, by adding or striking out the name of any party or by correcting a mistake in the name of the party, or a mistake in any other respect, or by inserting other allegations material to the case, or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved. Whenever any proceeding taken by a party fails to conform, in any respect, to the provisions of this code, the court may permit the same to be made conformable thereto by amendment."

We have said this statute should be liberally construed in order to prevent a failure of justice. See, Louis Hoffman Co. v. Western Smelting & Refining Co., 150 Neb. 524, 34 N. W. 2d 889; Robinson Outdoor Advertising Co. v. Wendelin Baking Co., 145 Neb. 112, 15 N. W. 2d 388. As stated in Dunn v. Bozarth, 59 Neb. 244, 80 N. W. 811: "It is within the discretion of the court to permit a defendant, during the course of the trial, to amend his answer so as to present a new defense. * * * In such

case, the plaintiff, if not prepared to meet the new issue, may have a continuance of the cause, upon such terms as the court may deem just." See, also, Miller Rubber Products Co. v. Anderson, 123 Neb. 247, 242 N. W. 449; Robinson Outdoor Advertising Co. v. Wendelin Baking Co., *supra.*

It appears that Lang was permitted to file an amended answer without any objections being made to his doing so and that appellee filed a reply thereto on November 30, 1954. This court has often held that: "Except where jurisdiction is involved, this court will consider on appeal only questions which have been presented to and passed upon by the trial court." Dodge v. Galusha, 151 Neb. 753, 39 N. W. 2d 539. See, also, Wright v. Lincoln City Lines, Inc., 163 Neb. 679, 81 N. W. 2d 170; Olson v. Shellington, *supra;* Greenberg v. Fireman's Fund Ins. Co., 150 Neb. 695, 35 N. W. 2d 772; Busch v. Hagenrick, 10 Neb. 415, 6 N. W. 474.

We think the foregoing principle is here controlling of this issue. But let us assume the question of the court's ruling is properly before us. The record shows the original answer filed February 5, 1954, was drafted, signed, and verified by Lang's counsel. As we said in Snyder v. Collier, 85 Neb. 552, 123 N. W. 1023, 133 Am. S. R. 682: "If plaintiff's petition is prepared, signed and verified by his attorney, and by mistake an erroneous statement is included therein, the court should before judgment, upon terms just and equitable to all parties, permit the litigant to withdraw that allegation." This has particular application here because the evidence adduced at the time the court permitted the amended answer to be filed established that there were no severe and unexpected headwinds at the time and the record as a whole shows it was an erroneous statement inadvertently included therein by defendant's counsel.

But appellee contends the statements contained in Lang's original answer that the airplane had run out

of gas because of severe and unexpected headwinds were judicial admissions and required no proof on this issue. It is of course true, as we said in Wright v. Lincoln City Lines, Inc., 160 Neb. 714, 71 N. W. 2d 182, that: "A party may at any time invoke the language of the pleading of his adversary on which the case is tried on a particular issue as rendering certain facts indisputable; and in so doing he is neither required nor permitted to offer the pleading in evidence. * * * An admission made in a pleading on which the trial is had is more than an ordinary admission. It is a judicial admission and constitutes a waiver of all controversy so far as the adverse party desires to take advantage of it, and is therefore a limitation of the issues." See, also, Lash v. Erisman, 167 Neb. 606, 94 N. W. 2d 32; Johns v. Carr, 167 Neb. 545, 93 N. W. 2d 831. But here Lang was permitted to file an amended answer upon which the case was actually tried. Under this situation the following applies to admissions contained in Lang's original answer: "A pleading which has been superseded by an amended pleading is only evidence of the facts therein alleged, and must be introduced as any other evidence in order to be considered. * * * The rule that a party may at any and all times invoke the language of his opponent's pleading as rendering facts therein alleged indisputable applies only to statements in the pleadings upon which the case is tried." In re Estate of McCleneghan, 145 Neb. 707, 17 N. W. 2d 923. See, also, Arman v. Structiform Engineering Co., 147 Neb. 658, 24 N. W. 2d 723; Miller v. Nicodemus, 58 Neb. 352, 78 N. W. 618.

Appellee contends the trial court's granting him a new trial is correct because it had erred in two respects in refusing him permission to amend his petition to conform to the proof, first, by refusing to permit him to include a charge of negligence to the effect that the defendant was negligent in failing to have flares aboard on a night flight as required by law and, second, in

refusing him permission to include a charge of negligence to the effect that the safety belt appellee was using was defective.

We have already set out the fact that the evidence shows the airplane was not carrying flares as either the federal statutes or regulations governing at the time required. There is also evidence to the effect that the safety belt appellee was using broke. The pilot testified the safety belt evidently had a flaw in it or it wouldn't have broken, that is, if it broke it was defective.

As we have already said, section 25-852, R. R. S. 1943, which applies to all parties involved in any litigation and permits amendments to their pleadings at any time during the course of the trial, should be liberally construed and applied in order to prevent a failure of justice. See, Dixon v. Coffey, *supra;* Robinson Outdoor Advertising Co. v. Wendelin Baking Co., *supra.* However, as stated in Anderson v. Moser, 169 Neb. 134, 98 N. W. 2d 703: "It is within the discretion of the trial court to permit or refuse an amendment of a pleading during the trial of a case, and error cannot be predicated on the action of the court in reference thereto unless an abuse of discretion is established to the prejudice of the party who is adversely affected thereby."

It is the rule of this court that: "A violation of statutes regulating the use and operation of motor vehicles upon the highways is not negligence per se, but evidence of negligence which may be taken into consideration with all the other facts and circumstances in determining whether or not negligence is established thereby." Landrum v. Roddy, 143 Neb. 934, 12 N. W. 2d 82, 149 A. L. R. 1041. See, also, O'Neill v. Henke, 167 Neb. 631, 94 N. W. 2d 322; Gleason v. Baack, 137 Neb. 272, 289 N. W. 349.

As stated in Barney v. Adcock, *supra:* "The violation of a statute intended to assure the safety of travelers on the public highways is not negligence as a matter of

law but may be considered with other evidence in deciding an issue of negligence." Likewise, we think, the violation of any provision of a federal statute, or rules or regulations promulgated thereunder which are intended to assure the safety of travelers in airplanes, is not negligence as a matter of law but may be considered with other evidence in deciding an issue of negligence.

It is true, as appellant contends, that ordinarily if a plaintiff wishes to amend his petition by inserting a new issue he should do so, after he has rested, by asking leave to withdraw his rest for that purpose and, if granted, to introduce his evidence in support thereof. If such request is granted then the defendant, if he makes it clear to the court that he is not prepared to meet the new issue, should be granted a continuance for that purpose upon such terms as the court may deem just. However, such procedure is not necessary if the evidence relied on by plaintiff is already properly in the record. The proper procedure in such cases is to ask leave to conform thereto.

Appellee, in his opening statement to the jury, withdrew all charges of negligence against the defendant, of which there were six, except the claim that the pilot failed to refuel en route when he had ample opportunity and time to do so and thus permitted the plane to run out of gas. It is apparent this came about because of the allegations of the defendant's original answer, hereinbefore set forth, upon which the trial started. By its rulings and instructions Nos. 1, 7, and 11, the trial court held the appellee strictly thereto. In this we think the trial court abused its discretion when appellee requested leave to amend to conform to the proof as to the flares; especially in view of the fact that the defendant had been permitted to change his position by the nature of the allegations of his amended answer. As to the second request to include a charge of negligence to the effect that the safety belt appellee

was using was defective, quite a different situation presents itself. There is no evidence showing any part of the safety belt was defective except the pilot's statement that it evidently had a flaw in it or it wouldn't have broken. But a safety belt is not such a piece of equipment that the doctrine of res ipsa loquitur applies thereto in case it breaks. In the absence of the doctrine applying there is no evidence upon which a jury could base its finding that it broke because it was defective. The pilot did not testify it was defective. He only assumed it must have been or it wouldn't have broken. As we said in Wessel v. City of Lincoln, 145 Neb. 357, 16 N. W. 2d 476: "A verdict may not rest on mere conjecture or speculation." In view thereof, we do not think the trial court abused its discretion when it denied appellee's request to include a specification of negligence relating thereto to conform to the proof.

We have already set forth the nature of flares and the use for which they are intended and can be put. In view thereof a jury could properly find that the failure to have such flares on board the airplane, when the pilot attempted to make an emergency landing at Atlantic on an unlighted airfield, was the proximate cause of the airplane missing the runway and landing in a field of soybeans adjacent thereto, which resulted in the airplane crashing and nosing over on its top.

Appellee also contends the trial court was correct in granting him a new trial because certain exhibits were, on objection thereto by defendant, erroneously excluded. These exhibits consisted of letters from a division of the Civil Aeronautics Administration located at Des Moines, Iowa, and a regional office thereof located at Kansas City, Missouri, addressed to Lang and Vequist, respectively, and admittedly received by them. These exhibits were offered by appellee solely for the purpose of impeachment. In Drewes v. State, 156 Neb. 319, 56 N. W. 2d 113, we said: "Impeaching evidence is that

which is directed to the question of the credibility of the witness."

In regard to the C.A.A.'s investigation of the accident Lang testified he was present at the airfield at Atlantic on the day after the accident happened, when two inspectors for the Des Moines office of C.A.A. investigated it; that no charge of any kind or character was ever made by the government against him for violation of any rule or regulation as a result thereof; and that the C.A.A. gave him a clean bill of health. Defendant offered in evidence a certified copy of certain records on file in the Records Section, Bureau of Safety Investigation, Civil Aeronautics Board in Washington, D. C., covering the accident to support this contention. It is apparent that defendant's counsel made much use of the fact, as contended, that Lang and the pilot had been given a clean bill of health by those in authority. However, the letters above referred to clearly evidence that such was not the fact for they show that the Civil Aeronautics Administration found Lang and the pilot guilty of violating certain provisions of the Civil Air Regulations and provisions of the Civil Aeronautics Act of 1938, as amended. These violations, as evidenced by the letter addressed to Lang dated October 8, 1952, related to his failure to have flares on the airplane when its flight was planned to continue beyond sunset; in carrying inadequate fire extinguishing equipment thereon; and in not carrying adequate first aid equipment thereon. As to the pilot the findings were the same except that it did not contain any finding of violation as to fire extinguishing equipment carried thereon being inadequate. It may be, as appellant contends, that these exhibits were not admissible as substantive proof. See 49 U. S. C. A., § 1441(e). We do not pass on that issue for such is not the situation. Here these letters were offered solely for impeachment purposes. We think they should have been received for that purpose and, under the circumstances disclosed by the record, we think it was

very prejudicial for the trial court to exclude them. See 98 C. J. S., Witnesses, § 537, p. 473.

This litigation has already unnecessarily extended over a long period of time and unfortunately Lang has died in the meantime, but these facts are not here controlling. The record shows appellee has never had an opportunity to fairly present his case to a jury. In view of what we have herein said and held we affirm the trial court's judgment granting appellee a new trial.

AFFIRMED.