MICHAEL WHALEN, APPELLANT, V. U S WEST COMMUNICATIONS,
INC., AN IOWA CORPORATION AND SUCCESSOR IN INTEREST TO
NORTHWESTERN BELL TELEPHONE COMPANY, AND
ST. PAUL INSURANCE COMPANY, ITS WORKERS' COMPENSATION
INSURANCE CARRIER, APPELLEES.

570 N.W.2d 531

Filed November 21, 1997.    No. S-95-1181.

James E. Harris, of Harris, Feldman Law Offices, for appellant.

Douglas J. Peterson and, on brief, Kenneth C. Stephan, of Knudsen, Berkheimer, Richardson, Endacott, and Routh, for appellee U S West.

P. Shawn McCann and Ronald E. Frank, of Sodoro, Daly & Sodoro, for appellee St. Paul Insurance Co.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, and McCORMACK, JJ.

WRIGHT, J.

Michael Whalen appeals the district court's summary judgment in favor of U S West Communications, Inc. (U S West). The court concluded that U S West neither owed nor breached a duty of due care to Whalen and ordered Whalen's action against U S West dismissed with prejudice.

## I. SCOPE OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Kramer v. Kramer*, 252 Neb. 526, 567 N.W.2d 100 (1997); *Bowling Assocs. Ltd. v. Kerrey*, 252 Neb. 458, 562 N.W.2d 714 (1997).

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Heins v. Webster County*, 250 Neb. 750, 552 N.W.2d 51 (1996).

## II. FACTS

On May 24, 1990, while working as a laborer with Diamond Engineering (Diamond) on a U S West jobsite located near Schuyler, Nebraska, Whalen received serious injuries when a manhole cover fell on top of him. Gary Anderson, a Diamond employee, and Dale Krotz, also a Diamond employee, were working with Whalen unloading and placing manhole cover assemblies.

On the day in question, David Ross, the U S West contract inspector, delivered two manhole cover assemblies to the jobsite so that Diamond employees would not have to make a special trip to the U S West storage facility to get them. Ross arrived at the jobsite with two manhole cover assemblies in the back of his truck, and Krotz and Ross both decided that the manhole cover assemblies would be unloaded. Krotz reasoned that it would be easier to move the manhole cover assemblies

directly from the truck to their places on the manhole vaults, rather than unloading them onto the ground and then moving them into place. Krotz testified that Ross had no part in making this decision and that Ross had stated only that he would like to have the manhole cover assemblies removed from his truck before he left later that day. Krotz said there was no time pressure on the crew to remove the manhole cover assemblies or to have them in place before the weekend began.

In order to lift the manhole cover assemblies out of Ross' truck, the Diamond crew used a cable sling apparatus, which is attached to the bucket on the arm of a backhoe tractor. Typically, such a sling apparatus has four cables which have clips at one end that are attached to an item the crew wishes to move. For some reason, the cable sling apparatus used on May 24, 1990, had only three operable cables. Krotz indicated that although having four cables was optimal, the manhole cover assemblies could be safely unloaded and placed using only three cables.

Whalen, Anderson, and Krotz worked on unloading and placing the manhole cover assemblies. Krotz operated the backhoe, while Whalen and Anderson attached the cables to a manhole cover assembly and stabilized it as it was lowered into place.

The first manhole cover assembly was installed without incident. Then Krotz lowered the cable sling apparatus toward the second manhole cover assembly in Ross' truck and waited for Whalen and Anderson to attach each cable to it. The facts do not indicate why, but Whalen and Anderson attached only two of the three cables to the manhole cover assembly. Krotz stated that he did not realize that Whalen and Anderson had attached only two of the three operable cables until the manhole cover assembly was high enough in the air that he could see it. Upon noticing that only two cables were attached, Krotz became concerned about the stability of the manhole cover assembly and told Whalen and Anderson that one of the men would have to hold onto one side of it in order to stabilize it. Whalen responded to Krotz' direction and reached up to stabilize the manhole cover assembly. As he touched the manhole cover assembly, it tipped, and the steel manhole cover fell onto Whalen, severely injuring him.

Whalen received workers' compensation benefits from Diamond's workers' compensation carrier, St. Paul Insurance Company (St. Paul), for the injuries he sustained. Whalen then filed the instant action, alleging that his injuries were caused by the negligence of U S West.

In its answer and response to requests for admissions, U S West stated it was the owner and general contractor of the jobsite when Whalen was injured. A motion for summary judgment filed by U S West was denied on the grounds that U S West had admitted that it was the owner and general contractor of the jobsite on which Whalen was injured and that, therefore, a genuine issue of material fact remained as to U S West's control and supervision of the jobsite and the employees. U S West moved to amend its answer and response to the request for admissions because these admissions were factually erroneous. The district court granted the amendments, and U S West filed an amended answer denying it was its own general contractor on the jobsite in question.

Following the commencement of this action, a liability coverage dispute arose between U S West and St. Paul. Subsequently, U S West and Whalen began settlement negotiations, and a document entitled "Consent to Entry of Judgment" was drafted. This document would have enabled Whalen to obtain a judgment in a specific amount in exchange for his agreement to execute the judgment only against the insurance policy issued by St. Paul or against Diamond. The above document required court approval before it would become effective. It also contained a signature line for St. Paul. The document was submitted to the court for approval, but was not signed by St. Paul. St. Paul filed an objection with the court, arguing, inter alia, that it had not consented to the agreement and that the court should not enforce it without consent of all parties. The court agreed and refused to enforce the agreement.

After the parties engaged in additional discovery, U S West filed a second motion for summary judgment, which the court sustained. Whalen timely appealed, and pursuant to our authority to regulate the dockets of the Nebraska Court of Appeals and this court, we removed the appeal to our docket.

## III. ASSIGNMENTS OF ERROR

Summarized and restated, Whalen assigns the following errors to the district court: (1) The district court erred as a matter of law by permitting St. Paul to assert its subrogation lien and object to the settlement agreement between U S West and Whalen, and (2) the district court erred in granting summary judgment because it failed to give Whalen all favorable inferences of fact, and genuine issues of material fact remain.

## IV. ANALYSIS

### 1. SETTLEMENT AGREEMENT

Whalen argues that the district court erred by permitting St. Paul to assert its subrogation lien and erred by permitting St. Paul to object to the settlement agreement between U S West and Whalen. St. Paul was joined as a party defendant under Neb. Rev. Stat. § 48-118 (Reissue 1993) in order to determine its subrogation interests as the workers' compensation insurance carrier for Diamond.

After commencement of this action, a dispute over liability insurance coverage arose between U S West and St. Paul. U S West and Whalen began settlement negotiations, and both signed a document entitled "Consent to Entry of Judgment," which is described above. Subsequently, U S West and St. Paul resolved their coverage dispute, and U S West disavowed the "Consent to Entry of Judgment" document.

Whalen argues that the district court abused its discretion by not approving the consent to entry of judgment document presented by U S West and Whalen. Judicial abuse of discretion exists when reasons or rulings of the trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Pope v. Pope*, 251 Neb. 773, 559 N.W.2d 192 (1997). We find that the district court's refusal to approve the document was not an abuse of discretion.

Although it is unclear from Whalen's brief, apparently the basis for the district court's refusal to approve the document was the fact that St. Paul had not signed the document, and thus its subrogation rights were not protected. Whalen insists that the district court incorrectly required that St. Paul sign the docu-

ment, since St. Paul could not claim a subrogation right against U S West as St. Paul's insured.

This argument misses the point. The settlement document was drafted as an agreement among three parties: Whalen, U S West, and St. Paul. A contract does not take effect unless each party to the contract manifests its consent to it. See *Fairchild v. Fairchild*, 176 Neb. 95, 125 N.W.2d 191 (1963). Whalen and U S West agreed to the settlement, but St. Paul did not. Thus, the district court was never presented with an agreement which was signed by all three parties, and therefore, it properly denied approval.

## 2. SUMMARY JUDGMENT

Whalen asserts that the district court erred in granting summary judgment because there existed a genuine issue of material fact regarding whether U S West owed a duty to Whalen. In granting summary judgment to U S West, the court stated:

Whalen has sued U. S. West, the party for whom Diamond was doing this work, alleging that U. S. West's negligence caused his injury. U. S. West has moved for summary judgment, on the basis that is [sic] owed no legal duty to Whalen, the breach of which may have caused him damage. After reviewing the record, I have concluded that U. S. West's assertion is correct. U. S. West retained no control over the jobs that Krotz, Whalen, and Anderson were doing to raise in U. S. West a duty of care to Whalen; and the risks posed by the nature of the work which Diamond had undertaken did not raise a nondelegable duty in U. S. West to look out for Whalen's safety; and the facts do not support an action for negligence directly against U. S. West. Therefore, U. S. West had no duty in this case, whose breach caused Whalen damage, and Whalen has no claim against U. S. West for his injuries. The fact, that U. S. West owned property; and the fact that U. S. West had a worker on site, do not vary this result.

It is well established that in order to prevail in a negligence action, there must be a legal duty on the part of the defendant to protect the plaintiff from injury, a failure to discharge that duty, and damage proximately caused by the failure to discharge that

duty. *Anderson v. Nashua Corp.*, 246 Neb. 420, 519 N.W.2d 275 (1994). Whalen contends that U S West owed him a duty because (1) U S West maintained control over the premises and work; (2) U S West had a nondelegable duty to protect Whalen; (3) as an employer of an independent contractor, U S West had a duty to protect Whalen against any particular risk associated with the work of Diamond; and (4) U S West had a duty to protect Whalen because it had voluntarily undertaken some of Diamond's work and had an obligation to complete the work in a nonnegligent manner. The question of whether a legal duty exists for actionable negligence is a question of law dependent upon the facts in a particular situation. *Fitzpatrick v. U S West, Inc.*, 246 Neb. 225, 518 N.W.2d 107 (1994).

### (a) Employer of Independent Contractor's Duty of Care

The general rule is that the employer of an independent contractor is not liable for physical harm caused to another by the acts or omissions of the contractor or his servants. *Id.* However, an employer of an independent contractor may be liable (1) if the employer retains control over the contractor's work or (2) if under the rule of law or statute, the employer has a nondelegable duty to protect another from harm caused by the contractor. *Id.*

Summary judgment is proper only when the pleadings, depositions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the inferences that can be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Kramer v. Kramer*, 252 Neb. 526, 567 N.W.2d 100 (1997). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.* Therefore, we first examine the particular facts surrounding Whalen's injury to determine whether U S West retained sufficient control over the jobsite to owe Whalen an independent contractor's duty of care. U S West's alleged nondelegable duty will be addressed later in this opinion.

### (i) Contract

Whalen claims that the contract between U S West and Diamond, by its terms, established that U S West would retain sufficient control over the construction project to create a duty to Diamond's employees, including Whalen. In particular, Whalen claims the contract permitted U S West to stop work and therefore concludes that U S West maintained sufficient control of the work to impose a duty upon it. In support of this assertion, Whalen refers to certain provisions of the contract and to the testimony of Ross, the U S West contract inspector, who stated in his deposition that while he was on the jobsite he had the power to stop work under certain conditions.

However, contrary to Whalen's argument, there is no explicit contractual provision providing that U S West had an unqualified right to immediately stop the work at any time. The only contractual provision that permitted U S West to interrupt the work and discharge Diamond was paragraph 19, which secured for U S West an anticipatory remedy in case Diamond defaulted under the contract. This provision concerned merely the performance of the basic contractual provisions and did not imply that U S West had the power to "micromanage" Diamond's actual performance of the tasks required by the contract.

We conclude from our review of the contract that the level of control set forth therein is not evidence of the type of control that establishes a duty on the part of the employer to protect the employees of the independent contractor. Instead, U S West retained the right to review the work of Diamond to ensure that the contract was being carried out in accordance with the plans and specifications of the construction project, which did not establish a duty to protect the employees of Diamond from harm. Therefore, this contract did not provide a basis for a factual dispute as to U S West's alleged duty to the employees of Diamond.

### (ii) Actual Control

Next, we examine Whalen's allegations that regardless of the terms of the contract, a number of actions by Ross are evidence that U S West maintained actual control over the jobsite and construction project on which Whalen was injured. The evi-

dence indicates that sometime before noon on May 24, 1990, Ross arrived at the jobsite with two manhole cover assemblies in his truck. Dwain Holroyd, the Diamond job superintendent, stated that Ross brought the manhole cover assemblies as a favor to Diamond because Diamond did not have them at the site and it would save Diamond employees from having to drive to the location where they were kept. When Ross arrived, a decision was made to move the manhole cover assemblies from Ross' vehicle and place them on the manhole vaults that were already in place. Whalen argues that there is evidence that at the time Ross arrived the Diamond crew was planning to quit work for the long weekend and that according to the affidavits of Ross, Anderson, Whalen, and Krotz a joint decision was made between Ross and Krotz to put the manhole cover assemblies in place prior to leaving for the weekend. Whalen asserts that the affidavits of Anderson and Whalen indicate that Ross' unexpected arrival and Ross' decision to place the manhole cover assemblies forced the crew to install the manhole cover assemblies even though it did not have proper equipment to do so safely. Whalen claims that Ross' actions created a "hurried atmosphere" and that this atmosphere affected Ross' control over the crew. Our review of the affidavits and other evidence does not support this contention.

As stated by Whalen, the affidavits of Anderson, Whalen, and Krotz all assert that the decision to place the manhole cover assemblies on the manhole vaults prior to stopping work for the long weekend was made by Ross or was a joint decision by Ross and Krotz. However, in contrast to their affidavits, each of these witnesses' depositions explicitly disavowed this characterization of Ross' role. In his deposition, Anderson admitted that "Ross never told us what to do at all." Similarly, Whalen admitted in his deposition that he had no personal knowledge about whether Ross directed the crew to place the manhole cover assemblies onto the manhole vaults that day. Krotz, in his deposition, also disavowed that Ross had any part in the decision to place the manhole cover assemblies on the manhole vaults on the day of Whalen's injury. Therefore, contrary to their claims in their affidavits, the witnesses testified in their respective depositions that Ross did not instruct or demand that

the manhole cover assemblies be placed on the manhole vaults on the day of the accident and that they did not have personal knowledge that Ross was involved in any decision to do so.

Under the terms of Neb. Rev. Stat. § 25-1334 (Reissue 1995), affidavits offered for the truth of a particular fact (1) shall be made on personal knowledge, (2) shall set forth such facts as would be admissible into evidence, and (3) shall show affirmatively that the affiant is competent to testify to the matters stated therein. *Young v. First United Bank of Bellevue*, 246 Neb. 43, 516 N.W.2d 256 (1994). Here, the affidavits given by Whalen, Anderson, and Krotz are inconsistent with the factual statements given in their depositions. Therefore, the question presented is whether such inconsistencies create a material issue of fact that prevents a judgment as a matter of law. To be effective, evidence opposing the rendition of a summary judgment must be made on personal knowledge and show affirmatively that the affiant is competent to testify to the matters stated therein. *Cillessen Constr. v. Scotts Bluff Co. Hous. Auth.*, 217 Neb. 39, 348 N.W.2d 418 (1984).

The evidence is undisputed that Ross never issued instructions to Diamond employees regarding the unloading of the manhole cover assemblies and did not supervise Diamond personnel in the performance of their tasks. Krotz admitted in his deposition that it was his decision and not Ross' to unload the manhole cover assemblies and place them directly on the manhole vaults. Whalen and Anderson testified that they had no personal knowledge to the contrary. All the witnesses disavowed the conclusionary statements in their affidavits suggesting that U S West executed control over the manner in which Diamond carried out its work pursuant to the contract. Statements in affidavits as to opinion, belief, or conclusions of law are of no effect. *Young v. First United Bank of Bellevue, supra.* As such, they are not evidence for the purposes of a summary judgment motion and are not considered when determining whether the summary judgment was appropriate. Therefore, we conclude that the affidavits were ineffective to oppose the summary judgment because they were not based upon the personal knowledge of the affiants and that the affiants were not competent to testify about whether Ross exercised control over Diamond employ-

ees. See, also, *Partridge v. Younghein*, 202 Neb. 756, 277 N.W.2d 100 (1979).

Whalen also claims that U S West conducted a preconstruction safety meeting in which it directed Diamond to follow U S West's safety procedures and that this demonstrates that U S West retained actual control over the worksite and Diamond employees. However, the evidence regarding this meeting does not support Whalen's characterization. Krotz' undisputed testimony was that the only thing ever discussed, with regard to U S West's safety procedures, was the possible removal of traffic signals and the possible barricading of streets. Contrary to Whalen's claim, there is no evidence that U S West directed Diamond to use U S West's safety procedures. In fact, Krotz admitted that Ross, the only U S West representative at the meeting, did not say anything. After reviewing the facts from which Whalen alleges there was control by U S West, we conclude that the evidence does not create a material issue of fact that U S West retained control over Diamond or its employees sufficient for U S West to owe a duty to the employees of Diamond, its independent contractor.

### (b) General Contractor's Duty of Care

Whalen argues that U S West breached its duty as a general contractor. Whalen points out that U S West admitted in its initial answer and response to the discovery request that it was the owner and general contractor of the jobsite where Whalen was injured. It was on the basis of these two admissions that the district court denied U S West's first motion for summary judgment.

An admission made in a pleading on which the trial is had is more than an ordinary admission; it is a judicial admission and constitutes a waiver of all controversy so far as the adverse party desires to take advantage of it, and therefore it is a limitation of the issues. *Sleezer v. Lang*, 170 Neb. 239, 102 N.W.2d 435 (1960). However, in the present case, after U S West's first summary judgment was denied, U S West filed a motion for leave to file an amended answer and a motion to amend its discovery response, stating that counsel had misstated that U S West was the general contractor over Diamond, on the basis of a misunderstanding of the facts. The district court granted U S

West leave to amend its answer and discovery response, and U S West filed an amended answer and accordingly served Whalen with an amended discovery response.

In *Sleezer v. Lang*, 170 Neb. at 252, 102 N.W.2d at 444-45, we addressed a situation similar to the case at bar and explained:

"A pleading which has been superseded by an amended pleading is only evidence of the facts therein alleged, and must be introduced as any other evidence in order to be considered. . . . The rule that a party may at any and all times invoke the language of his opponent's pleading as rendering facts therein alleged indisputable applies only to statements in the pleadings upon which the case is tried."

Therefore, U S West's admission that it was the general contractor may be used as evidence that it was the owner and general contractor of the worksite, but it cannot be treated as a judicial admission because of the amended answer.

We conclude that even if U S West acted as its own general contractor, U S West's actions do not constitute a breach of a general contractor's duty of care. The duty of a general contractor to the employees of a subcontractor extends only to provide a reasonably safe place to work and does not include a duty to inspect equipment that is owned, directed, or controlled by the subcontractor for the use of its employees. *Hand v. Rorick Constr. Co.*, 190 Neb. 191, 206 N.W.2d 835 (1973). The case at bar does not involve a general contractor's liability for failing to provide a reasonably safe place to work, sometimes called "premises liability," but involves injury caused by the misuse of defective equipment.

The parties agree that the cable sling apparatus used the day Whalen was injured had only three operable cables, even though such an apparatus is normally equipped with four cables. It is also undisputed that Whalen's injury was caused because Whalen and Anderson, both Diamond employees, attached only two of the three available cables to the manhole cover assembly. Viewing the evidence in a light most favorable to Whalen, the evidence reveals that the accident occurred because Diamond used defective equipment and two Diamond employees failed to use that equipment properly. As indicated,

a general contractor is not responsible for maintaining equipment used by subcontractors. Thus, there is no evidence to support the claim that U S West breached a general contractor's duty of care to Whalen.

(c) Peculiar Risk

Whalen next argues that U S West owed Whalen a duty because of our holding in *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993), that a general contractor has a duty to protect the employees of independent contractors from "peculiar risks." Whalen asserts that the placement of manhole cover assemblies was a peculiar risk.

In *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. at 799-800, 496 N.W.2d at 913, we explained this duty as follows:

> [I]f a general contractor hires an independent contractor to perform work which the general contractor "should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken," the general contractor may be liable for physical harm caused to employees of the subcontractor if the general contractor fails to exercise reasonable care to take such precautions, even though the general contractor has provided, in the contract or otherwise, that the subcontractor be responsible for such precautions.

We defined a "peculiar risk" to be a risk that involves some special hazard resulting from the nature of the work done which calls for some special precaution. We have held that the following two situations involved a particular risk. First, we found that having a steamfitter work near an opening on a floor deck of a building under construction which exposed 1-foot vertical reinforcing rods created a peculiar risk. Second, having a person paint the inside of an underground tank using a paint which emitted highly combustible fumes created a peculiar risk. See, *Anderson v. Nashua Corp.*, 246 Neb. 420, 519 N.W.2d 275 (1994); *Simon v. Omaha P. P. Dist.*, 189 Neb. 183, 202 N.W.2d 157 (1972).

In the present case, the district court held that the peculiar risk doctrine did not apply. We agree. We find no facts that support a determination that the placement of manhole cover

assemblies was anything unusual or that such a task created a peculiar risk.

### (d) Nondelegable Duty

We move on to consider Whalen's argument that as a matter of law, U S West had a nondelegable duty of care to protect Diamond employees from Diamond's negligence. There are three duties which an employer, in limited circumstances, may not delegate to an independent contractor: (1) the duty of an owner in possession and control of the premises to provide a safe place to work for the independent contractor's employees; (2) the duties imposed by statute or rule of law; and (3) the duty of due care when the independent contractor's work involves special risks or danger, including work that is dangerous in the absence of special precautions. *Parrish v. Omaha Pub. Power Dist., supra.*

As discussed earlier, there is no indication that U S West breached its duty of care by failing to provide a safe working environment. Similarly, we have already determined that this case does not involve a special risk or danger.

Whalen does not cite to the record for any basis for the assertion that U S West owed any other nondelegable duty to Whalen. Therefore, we conclude that Whalen's assertion that U S West is liable for a breach of its nondelegable duties is without merit.

### (e) Voluntary Undertaking

Finally, Whalen argues that U S West owed a duty because it voluntarily undertook to bring the manhole cover assemblies to the worksite for Diamond. We find no evidence that U S West was negligent when it brought the manhole cover assemblies to the jobsite and therefore, find that this argument is without merit.

### (f) Second Motion for Summary Judgment Proper

Whalen argues that even if we fail to agree with his assertion on the merits of this case, the district court erred by reentertaining U S West's motion for summary judgment. Whalen claims that once the district court ruled on the initial motion for summary judgment, it did not have jurisdiction to address a sec-

ond motion. Specifically, Whalen asserts that a district court abuses its discretion by reconsidering a summary judgment motion where the second motion was filed after the term in which the initial motion was decided.

It appears that Whalen is relying upon Neb. Rev. Stat. § 25-2001 (Reissue 1995) in making his argument. Section 25-2001 governs a court's power to vacate or modify a judgment or an order after the end of a term. We have long held that § 25-2001 governs only final orders and does not bar the reconsideration of interlocutory orders. See *Godfrey v. Cunningham*, 77 Neb. 462, 109 N.W. 765 (1906). Denial of a motion for summary judgment is not a final order and therefore not appealable. *Moulton v. Board of Zoning Appeals*, 251 Neb. 95, 555 N.W.2d 39 (1996).

Thus, under *Godfrey v. Cunningham, supra*, U S West's second motion for summary judgment was not governed by § 25-2001, and the determination of whether to entertain a second motion for summary judgment is entrusted to the discretion of the district court. See *Bringewatt v. Mueller*, 201 Neb. 736, 272 N.W.2d 37 (1978). The overruling of a motion for summary judgment does not decide any issue of fact or proposition of law affecting the subject matter of the litigation, but merely indicates that the court was not convinced by the record that there was not a genuine issue as to any material fact or that the party offering the motion was entitled to a judgment as a matter of law. *Rehn v. Bingaman*, 157 Neb. 467, 59 N.W.2d 614 (1953).

## V. CONCLUSION

Having addressed Whalen's assignments of error and considered the arguments therein, we find that Whalen's assignments of error have no merit and we affirm the judgment of the district court.

AFFIRMED.

STEPHAN, J., not participating.